THE CITY OF KANSAS CITY v. EUGENIA A. BRADY.

1. DEFECTIVE DRAINAGE — *City, When not Liable.* The city of Kansas City, in grading Tenney avenue, built a high embankment across Splitlog creek, and constructed a brick culvert through it for the passage of the stream. This culvert, though too small, would have afforded a sufficient escape for the water to avoid injury to plaintiff's property. The Orchard Place Land Company placed a high embankment on its land adjacent to said avenue, through which it constructed a drain of the same dimensions as the culvert constructed by the city. This drain became obstructed, so that it dammed up the waters of the creek, flooded the plaintiff's property, and caused the injuries for which suit is brought. *Held,* That the fact that the city authorities permitted the land company to join its drain to that constructed by the city does not render it liable to plaintiff for such injuries.

2. LIABILITY, *Extent of.* A city is only liable for acts of its officers performed in the line of their duties; and the fact that a city engineer plans a defective drain, to be constructed by private parties, which caves in and causes injury, does not impose any liability on the city.

3. FINDINGS, *Inconsistent with Verdict.* Where the special findings of the jury are inconsistent with the general verdict, they control, and judgment may be entered accordingly.

4. CITY, *Not Liable.* The special findings of fact in this case show that the city constructed an insufficient culvert and obstructed Splitlog creek, but that such obstruction did not cause nor contribute to the injuries to plaintiff's property. *Held,* That the city is not liable.

*Error from Wyandotte District Court.*

THIS action was brought by the defendant in error, as plaintiff below, against the city of Kansas City and the Orchard Place Land Company, to recover for damages to plaintiff's buildings, occasioned by an overflow of the waters of Splitlog creek. Splitlog creek is crossed by Tenney avenue. The grade line of said avenue, as established by the city authorities, ran about 35 feet above the channel of Splitlog creek. In order to provide for the passage of the water across this street, the city constructed a brick culvert, or "sewer" as it is called in this case, through the embankment which was made in bringing the surface of the street to grade. In constructing this embankment, the slopes extended about 50 feet onto the lands of the Orchard Place Land Company, lying immediately south of said street, and the city constructed the culvert, not only across the street, but also to the edge of the embankment. Thereafter the Orchard Place Land Company graded up its land about seven feet higher than grade line of Tenney avenue, and extended the culvert across its lands, constructing it of the same size, and in a manner similar to that part which had been constructed by the city. The plaintiff claims that the construction of this culvert was the joint act of the defendants; that it became obstructed because of its faulty and defective construction and insufficient dimensions, causing the water to be dammed up and to flow back into the plaintiff's houses, which were situated up stream from Tenney avenue, and were greatly injured thereby. The jury found a general verdict in favor of the plaintiff for $2,610, and also returned answers to a great number of special questions submitted to them at the request of the parties to the suit. Very many of the questions and answers are mere repetitions, in substance, of preceding ones. The most material findings are as follows:

"2. Before the time the plaintiff alleges that she suffered the injuries complained of in her petition, was Splitlog creek,

a water course, with bed and banks, and evidences of a permanent stream of water flowing through it? Yes.

"3. Did Tenney avenue, a street of the defendant city, extend across said Splitlog creek? Yes.

"4. Was the grade of said street regularly established by the defendant city? Yes.

"5. In order to bring said street to its established grade, was it necessary to raise the surface of the same, where it crossed said creek, to a height of about 35 or 40 feet above the bed of said creek? Yes.

"6. Did the city cause said street to be raised to its established grade by constructing an embankment across said creek? Yes.

"7. Did the city engineer provide a plan for the grading of said street and for the drainage of the water that might accumulate in said creek? Yes.

"8. Was said city engineer a competent and experienced civil engineer? Yes.

"9. Did the city adopt said plan of the city engineer, and cause said grading and drainage to be constructed in accordance therewith? Yes.

"10. Did the city, in conformity to said plan of the city engineer, cause a brick drain or sewer, four feet in diameter, to be constructed through said embankment? Yes.

"11. Was said drain or sewer of sufficient capacity, if not obstructed, to convey the water that was accustomed to flow and might reasonably be expected to flow in said creek? No.

"12. Was said drain of sufficient capacity, if not obstructed, to convey the water of said creek, so that the same would not set back and overflow plaintiff's property? Yes.

"13. Was the city guilty of any negligence in planning or constructing said embankment and drain? Yes.

"14. If you answer the preceding question in the affirmative, then state in what such negligence consisted. Sewer not large enough.

"15. Did the Orchard Place Land Company, codefendant of the city, own the lots in the bed of said creek below said embankment and abutting on said street? Yes.

"16. Did the Orchard Place Land Company, codefendant of the city, after said embankment and drain were built, fill up the lots lying in the bed of said creek below said embankment, and extend said drain across said lots? Yes.

"17. Did the city have any connection with its codefend-

ant in filling up or extending said drain through said lots in the bed of said creek, below embankment? Yes.

"18. Was the filling up of said lots and extending said drain the sole and separate acts of said codefendant? No.

"19. If you answer question No. 17 in the affirmative, then state what connection the city had with said work. By allowing them to connect with city sewer."

"29. At the time of the high water that caused the injury to plaintiff, was the sewer that extended through the embankments across Splitlog creek, at Tenney avenue, obstructed? Yes.

"30. State whether said obstruction was in the part of said sewer constructed by the city, or in that part of said sewer constructed by the Orchard Place Land Company. In the Orchard Place Land Company.

"31. Did said obstruction in said sewer cause the injury to plaintiff complained of in the petition? Yes."

"35. How long did the water that overflowed plaintiff's premises remain standing upon said premises? About three weeks."

"37. Was it the obstruction in that part of the Tenney avenue sewer built by the Orchard Place Land Company that caused the water to remain standing so long on plaintiff's premises? Yes."

"46. How long did the water which overflowed the plaintiff's premises remain thereon? Three weeks."

"49. At the time of the overflow which caused the injuries to plaintiff, was there any obstruction in that part of the sewer at Tenney avenue constructed by the city through the embankment made in grading said street? No."

"53. Was the construction of the embankment by the city across Splitlog creek the joint act of the city and the Orchard Place Land Company? No.

"54. Was the drain or sewer which the city constructed through the embankment which it built across Tenney avenue properly constructed, under the supervision of a competent engineer? Yes."

"56. Was said drain or sewer so constructed by the city through the embankment at Tenney avenue of sufficient dimensions? No.

"57. If you answer the preceding question in the negative, then state what the dimensions of said drain or sewer should have been. Ninety inches diameter or more."

"67. Did the sewer built by the Orchard Place Land Company fall in, so as to obstruct the passage of water through it, before the flood of high water that injured the plaintiff occurred?    Yes.

"68. If you answer the preceding question in the affirmative, then state how long it was before said flood or high water that said sewer so fell in and obstructed the passage of water.    One month or more."

"72. Was the sewer constructed by the city so much too small that, if open and free from obstruction, the surplus water it could not discharge would have set back 1,000 feet to plaintiff's property and overflowed it, at the time of the high water or flood when the plaintiff's property was overflowed?    It might, but it would not have remained long."

"74. Was the construction of the embankment and sewer on the property of the Orchard Place Land Company lying below Tenney avenue the joint act of the said Orchard Place Land Company and the city.    As to the sewer, yes."

"76. If you answer the preceding question in the affirmative, then state all the acts the city did, and what connection it had with the construction of said embankment and sewer on the land of the Orchard Place Land Company.    In locating the sewer, and permitting the land company to attach their sewer to the city sewer.

"77. Was the building of the embankment and sewer on the lots of the Orchard Place Land Company, after the city had completed its grading of Tenney avenue, the separate and independent act of the Orchard Place Land Company? Yes, with the exception of the locating and building of sewer.

"78. If the sewer built by the city was not of sufficient size, state whether the plaintiff was injured by such defect. No."

"80. Was the overflow of plaintiff's premises caused by any defect in the size of the sewer built by the city.    No."

"83. State whether the injuries suffered by the plaintiff from the overflow of her premises were caused by a defect in the size of the sewer built by the city, which defect prevented the water being carried off fast enough to prevent the overflow, or whether said injuries were caused by the fact that all flow of water through the sewer was obstructed and prevented.    It was the result of the obstruction in the sewer."

"86. When was the construction of the embankment by the Orchard Place Land Company across Splitlog creek com

menced, and when was it completed? Commenced in October, 1888, and completed in June, 1889."

"98. Did the fact that the earth caved and obstructed the north end of the city's sewer, at the time Mr. Twiss states that it did so cave, cause or contribute towards the plaintiff's injuries? No."

"108. Do you award any damages against the city on account of any acts of negligence committed by it that caused or contributed to the plaintiff's injuries? Yes.

"109. If you answer the preceding question in the affirmative, then state all the acts of negligence so committed by the city for which you award damages. For neglecting to require the Orchard Place Land Company to keep its sewer in repair."

The city moved for judgment on these special findings. The court overruled the motion, and gave judgment for the plaintiff. The city alleges error in this ruling, and brings the case here for review.

*James M. Rees*, and *K. P. Snyder*, for plaintiff in error:

We contend that (1) the city had a right to establish the grade of Tenney avenue, and bring the street to the grade so established. Gen. Stat. of 1889, ¶¶ 557, 562. (2) It had the right to establish, alter and change the channels of streams and water courses. Gen. Stat. of 1889, ¶ 555, subdiv. 31. (3) For the exercise in a proper manner of these rights, no liability attaches to the city. 2 Dill. Mun. Corp., § 987. (4) A subsequent and independent act of another cannot make a previous lawful act of the city unlawful.

In view of these propositions of law, we claim that no case is made against the city on account of its own acts.

The answers of the jury to particular questions of fact completely dispose of all the allegations of the petition. "A municipal corporation is not liable to an action for damages either for the nonexercise of or for the manner in which in good faith it exercises discretionary powers of a public or legislative character." 2 Dill. Mun. Corp., § 949. The sewer and embankment were such that they did not and could not cause the damage complained of. Beyond any question, then, had not the land company built its embankment and sewer

₁o damage would have resulted to the plaintiff. We conclude, therefore, that, on account of its separate acts, no case is made against the city.

Is the city liable on account of the acts done by the Orchard Place Land Company? The city, a public corporation, (Gen. Stat. of 1889, ¶1152,) and the Orchard Place Land Company, a private corporation, are sued as joint wrongdoers. The statement of the nature of the suit and the parties suggests a strong query as to the propriety or possibility of such joint wrongful act. Participation in a wrong is thus described by Mr. Justice Cooley, in his work on Torts, page 127:

"Most wrongs may be committed by one or several. When several participate, they may do so in different ways, at different times, and in very unequal proportions. One may plan, another may procure the men to execute, others may be the actual instruments in accomplishing the mischief; but the legal blame will rest upon all as joint actors. In some cases, one may also become a joint wrongdoer by consenting to and ratifying what has been done wrong by others. But this cannot be merely done by approving a wrong, or by expressing pleasure or satisfaction at its being accomplished."

A consideration of these answers shows that there were no joint unlawful acts of the city and land company that produced the injury to the plaintiff. We submit, in conclusion on this branch of the case, that no joint wrong is shown to have been committed; that the city had no connection with the building of the embankment and sewer of the land company, such as to make it liable for any defects therein. The city did not so operate or coöperate with the land company as to become, with it, a cause of the injury. The negatives of permitting what it could not prevent, and neglecting to perform what it was not required, could not make it the legal wrongdoer — *causa causans.*

*True & True,* and *Littick & Littick,* for defendant in error:

The fact that some other party aided, abetted or assisted the defendant in the commission of a tort (or creating or

maintaing a nuisance in a water course) is not a matter of defense, but renders both liable for the full amount of damages so caused. See Cooley, Torts, p. 127. Even if the other party had not been sued, it would not lessen the city's liability. *Webster v. H. R. Rld. Co.*, 38 N. Y. 260; *Fish v. Street*, 27 Kas. 273. See, also, *Klauder v. McGrath*, 35 Pa. St. 128; *L. S. N. Co. v. Richards*, 57 id. 148; *Young v. City of Kansas*, 27 Mo. App. 101; *Barnes v. Hannibal*, 71 Mo. 449; *Village of Carterville v. Cook*, 129 Ill. 152.

For a case directly in point and on all fours with the case at bar, see *Bryant v. Bigelow Carpet Co.*, 131 Mass. 491. See, also, *Hillman v. Newington*, 57 Cal. 56; *Colgrove v. N. Y. & N. H. Rld. Co.*, 20 N. Y. 492; *Cuddy v. Horn*, 10 N. W. Rep. 32; *Spangler v. City of San Francisco*, 23 Pac. Rep. 1091; 2 Dill. Mun. Corp., § 1038, and the numerous cases there cited under note 1; *Pettigrew v. Village of Evansville*, 25 Wis. 223; *Wharf Co. v. Portland*, 67 Me. 46; *City of Atchison v. Challiss*, 9 Kas. 604; *Obrien v. City of St. Paul*, 25 Minn. 331; *Vanpelt v. City of Davenport*, 42 Iowa, 301; *McClure v. City of Red Wing*, 9 N. W. Rep. 767; *Union Trust Co. v. Cuppy*, 26 Kas. 754.

The opinion of the court was delivered by

ALLEN, J.: The theory of the plaintiff was that the construction of the covered water way was the joint act of the city and the Orchard Place Land Company; that the whole structure should be treated as one entire thing, and that both defendants are liable for any defects in its construction; that the city engineer, as a representative of the city, planned the work; and that the city is responsible not only for any defects in the construction of that part which was built and paid for by the city, but of that which the Orchard Place Land Company constructed as well. The jury found that the embankment and culvert constructed by the city would not have caused injury to the plaintiff, and that the obstruction of that part of the drain which was built by the Orchard Place Land Company did cause the overflow of plaintiff's property. The

only ground on which the jury based the city's liability, given in answer to the special questions, is in locating the sewer, and permitting the land company to attach its sewer to the city sewer, and for neglecting to require the Orchard Place Land Company to keep its sewer in repair. The building of the sewer was not all done either at one time or as one act. The city finished all it constructed some time before the land company built its part. That part constructed by the land company was wholly on its own lands, where it needed no license nor authority from the city. It was wholly outside of the official duty of the city engineer to make plans or give directions as to what the land company should do on its own property. The city council had no other or greater jurisdiction over its property than over that of any other proprietor owning land along Splitlog creek. It had no lawful authority to permit anyone to obstruct a natural water course.

It is not contended that the obstructions placed in the bed of the stream by the land company were a nuisance, which it was the duty of the city to remove, and that the city is liable because of a failure of the city officers to remove a nuisance, but plaintiff seeks to connect the city with the original placing of the obstruction in the stream. It is expressly found that the part of the sewer which caved in and caused the obstruction was built solely by the land company. The mere fact that it was built on the same plan as that constructed by the city, and that it joins the city's part either on the line between the street and the land company's property or on the company's land, does not show, nor tend to show, any connection of the city with it. Generally speaking, property owners have a right to build what they please on their own lands, provided they do not thereby occasion injury to others. They have no right to obstruct natural water courses, nor have the city authorities the right to permit them to do so. If they do place obstructions in a stream, and thereby occasion a nuisance injurious to others, it may be that the city authorities would

1. Defective drainage— city, when not liable.

20 — 52 KAS.

have the right to cause its removal; but private individuals injured thereby also have an independent remedy, and may proceed in the courts to cause its removal. Suppose, in this case, that there were a succession of private landowners, who saw fit to construct covered ways for the flow of the water of this stream; five of them so constructed their portions that no injury would result to anyone, but the sixth builds his drain, as that of the land company was built, so that it falls down and causes injury: would the mere fact that the obstruction prevented the water from flowing through the parts of the drain constructed by the other five render them liable also? or could it be held that the similarity of construction had anything to do with the case? and how could one proprietor prohibit his neighbor from joining on and extending the water way from the boundary line across his own land?

It cannot be successfully contended that the city is responsible for any bad advice or defective plans the city engineer may have made for private parties. The city can only be bound for acts of its officers done within the lines

2. Liability, extent of. of official duty. The city engineer's public duties terminated with the end of that part of the culvert which the city in fact constructed. For whatever he may have done beyond that, he may, perhaps, be responsible individually, but the city is not. The jury find that the city completed its embankment about two months before the Orchard Place Land Company built the embankment below it. Counsel for defendants in error cite us to many authorities to the effect that the city has no right to obstruct a natural water course, and that where two or more, by their concurrent negligence, cause injury to a third person, they are jointly and severally liable. With the correctness of this proposition we are not disposed to take issue. We have carefully examined the case of *Bryant v. Bigelow Carpet Co.*, 131 Mass. 491, which counsel so confidently rely on as strictly in point, and have no fault to find with it. The plaintiff's injury in that case was occasioned partly by the act of the car-

pet company in constructing its dam, and partly by that of the railroad company in constructing its embankment, and permitting the culverts thereunder to become obstructed. Both concurred directly in causing the overflow which destroyed the plaintiff's property, and it did not appear that the injury would have resulted without such concurrence; but in this case the jury find, in effect, that the injury was occasioned solely by the obstructions on the Orchard Place Land Company's property. It does not appear that the flow of water over plaintiff's premises was increased a drop by reason of the embankment built by the city. In that case, it appeared that the carpet company raised its dam so as to raise the height of the water six or seven feet above the top of the culverts under the railroad, but the water on the side of the road nearest plaintiff's property was raised by the railroad company's embankment more than two feet higher than on the other side. In other words, the carpet company raised the water part way and the railroad company raised it the rest. The dam of the carpet company would not alone have caused the injury, nor would the embankment of the railroad and its defective culverts alone have done so. The carpet company erected insufficient embankments to sustain the water on the side next plaintiff's property, and was negligent in that respect. The decision is placed explicitly on the ground that the acts of both defendants contributed to plaintiff's injury. We think that case was correctly decided, yet that it does not assist the plaintiff in this. It is true the jury found that the culvert built by the city was defective, being too small; but this could give the plaintiff no cause of action against the city unless the defect caused injury to her. Her property was located about a thousand feet up stream; and, though the obstruction caused by the grading of Tenney avenue would have caused the water to flow back in time of floods, the jury found that it would not have occasioned injury to the plaintiff. This is not a case where the city dams up one outlet and the Orchard Place Land Company another, so that the two acting together retain the water, but the ob-

struction which causes the injury is solely the work of the
Orchard Place Land Company.   Section 287 of
the code provides: "When the special finding of
facts is inconsistent with the general verdict, the
former controls the latter, and the court may give judgment
accordingly."

*3. Findings, inconsistent with verdict.*

We think the findings in this case show that the city is not
liable.   The judgment will be reversed, and the
case remanded, with directions to enter judgment
in favor of the defendant, the city of Kansas
City, for costs.

*4. City, not liable.*

All the Justices concurring.