[No. 4729.   Decided December 10, 1903.]

S. NORMILE, *Appellant,* v. CITY OF BALLARD, *Respondent.*[1]

MUNICIPAL CORPORATIONS—CONTRACTS FOR STREET IMPROVE-
MENTS—CONSTRUCTION—CITY ENGINEER—LIABILITY OF CITY FOR
NEGLIGENCE OF AGENT.   A contract between a city and two con-
tractors whereby one was to pay the other for the removal of
gravel from certain streets a specified sum per yard for "5000
cubic yards, more or less as may be designated by the city engi-
neer," plainly refers to the amount and not to the location of the
gravel, and a complaint for the unskilfulness of the city engineer
in measuring said gravel, pursuant to such contract, relates to his
official duties and sufficiently states the liability of the city for
the negligent act of its agent.

SAME.   A city is liable for the negligence and unskilfulness of
its city engineer in estimating the amount of gravel moved by
a contractor under a street grading contract, when thereby an-
other contractor was, under the terms of a contract with the city,
forced to pay a sum largely in excess of the amount due for such
work.

SAME—CONTRACT OF CITY—CONSIDERATION—LIABILITY FOR NEG-
LECT OF CITY ENGINEER.   Where the city and two separate con-
tractors on street improvements enter into a contract whereby
one contractor is to pay the other 20 cents per cubic yard for all
gravel placed in a certain street, the amount to be determined
by the city engineer, and which contract was made for the pur-
pose of enabling the contractors to complete their contracts, suffi-
cient consideration on the part of the city, making it liable on
the contract for the neglect of the city engineer, is shown by the
fact that the value of removing the gravel was 35 cents per yard,
15 cents of which was to be paid by the city, and that thereby the
city was relieved from the payment of 20 cents of such charge.

Appeal from a judgment of the superior court for King
county, Morris, J., entered February 7, 1903, upon sus-
taining a demurrer to the complaint, dismissing an action
against a city for damages caused by the unskilfulness of
the city engineer.   Reversed.

[1]Reported in 74 Pac. 566.

24-33 WASH.

*Bennett & Whitman,* for appellant.

*Tucker & Hyland,* for respondent.

DUNBAR, J.—This action comes here upon the alleged error of the court in sustaining the demurrer to plaintiff's complaint. It will therefore be necessary to set out the complaint in full. It is as follows:

"1.   That the said city of Ballard was, and at all times hereinafter mentioned, and now is, a municipal corporation, being a city of the third class, organized under and by virtue of the laws of the state of Washington.

"2.   That during all the times hereinafter mantioned one H. T. Bostain was the duly appointed, qualified, and acting city engineer of said city, appointed by the city council of said city to hold office during the pleasure of the council, and as such was the servant or agent of said city.

"3.   That about July 1, 1901, the said city awarded to plaintiff a contract to clear, grub, and grade First Avenue West in said city, furnishing an approximate estimate of 18,810 cubic yards of earth to be removed therefrom.

"4.   That the said city of Ballard awarded to Walter Manney and Frank W. Frazier contracts to gravel Broadway and Second Avenue West in said city, with gravel to be taken from said First Avenue West, for which the said city agreed to pay the said Manney and Frazier 15 cents per cubic yard in addition to the amount paid by plaintiff. With that end in view all the parties, to-wit, S. Normile, Walter Manney, Frank W. Frazier, and the city of Ballard, joined in a written agreement whereby the gravel to be placed on Broadway and Second Avenue West was to be taken from First Avenue West, for which plaintiff agreed to pay the said Manney and Frazier 20 cents per cubic yard according to the estimate furnished by the said city engineer, a copy of said agreement is marked Exhibit 'A,' hereto attached, and made a part thereof; that under said contract the said Manney and Frazier removed

3993.38 cubic yards of gravel from said First Avenue West, and no more.

"5.    That the said city engineer, acting for and on behalf of said city, and in discharge of the duties of his said office, and not otherwise, furnished final estimates aggregating 7948 cubic yards of gravel removed by said Frazier and Manney from said First Avenue West, which is 3954.62 cubic yards in excess of the actual amount removed by them.

"6.    That acting on the representations and final estimates of the said city engineer, and believing that they were true and correct, the said plaintiff paid to the said Manney and Frazier the sum of $1,589.60, which is $798.67 in excess of the amount earned by them under the terms of said contract.

"7.    That said city engineer was unskilful, and said excessive payment was made by reason of the erroneous and excessive final estimates furnished by the said city, by its agent, said city engineer, by reason whereof said plaintiff has been damaged in the said sum of $798.67, a claim for which was duly filed with, and disallowed by, the city council of said city.

"Wherefore plaintiff prays judgment against the said city of Ballard in the said sum of seven hundred and ninety-eight dollars and sixty-seven cents, with interest, together with costs of suit."

The Exhibit "A" referred to in the complaint is as follows:

"This agreement made and entered into between S. Normile, of Seattle, Wash., Walter Manney, of Ballard, Wash., Frank W. Frazier, of Ballard, Wash., and the City of Ballard, a municipal corporation of the third class: Witnesseth, that the said S. Normile, to whom was awarded the contract of improving a portion of First Avenue West, doth hereby agree with the said Walter Manney and Frank W. Frazier, to whom was awarded the graveling of Broadway and Second Avenue West, that he, the said S. Normile, will clear, grub, and remove all the surface dirt from said

First Avenue West, down to the gravel on or before the first day of August, 1901, and that said Normile will pay the said Walter Manney for the removal of two thousand cubic yards of gravel, more or less, as may be designated by the city engineer, for the improvement of Broadway, and for the removal of which said Normile shall pay the said Manney the sum of twenty cents per cubic yard, when the contract of the said Manney shall have been completed. And the said Normile shall pay the said Frank W. Frazier for the removal of three thousand cubic yards of gravel, more or less, as may be designated by the city engineer, the sum of twenty cents per cubic yard, as soon as the contract of said Frazier shall have been completed. It is understood that this agreement is made for the purpose of enabling the said Manney and said Frazier to comply with their respective contracts with the city of Ballard for the improvements of Second Avenue West and Broadway respectively, the gravel for which is to be taken from First Avenue West, from the contract awarded S. Normile; and for this reason, this contract shall be construed together with the respective contracts for street improvement between the parties to this agreement; and it is further agreed by all parties hereto that, if either of the parties to this agreement shall fail to complete their respective contracts in the time, and according to the specifications, for their respective street improvements so far as they relate to this contract, the city of Ballard may complete said contract for the same, pay for the same, and deduct the cost thereof from the contract price of the respective contractors. It is further agreed that the city of Ballard may require evidence to the effect that all labor and material had been fully paid for before the final estimate to the respective contractors herein has been made and paid for." (Signatures of the contractors and the city.)

The respondent contends that the city is not responsible for the wrongful act or neglect of its engineer, for the reason that the engineer is not the agent of the city in the per-

formance of his duties, and cites § 974, 2 Dillon, Mun. Corp. (4th ed.), where it is said:

"It will be thus seen, on general principles, it is necessary, in order to make a municipal corporation impliedly liable on the maxim of *respondeat superior* for the wrongful act or neglect of an officer, that it be shown that the officer was *its* officer, either generally or as respects the particular wrong complained of; and also that the wrong was done by such officer while in the legitimate exercise of some duty of a corporate nature which was devolved on him by law or by the direction or authority of the corporation."

We think there is nothing in the technical objections to the complaint, raised by the respondent, and that it sufficiently states the liability of the city for the negligent or wrongful acts of its engineer in the performance of the duties of his office. The words in the contract, "as may be designated by the city engineer," when read in connection with the whole contract, plainly refer to the amount of gravel and not to its location.

It is also contended by the respondent, that the city is not responsible in any event; that the engineer is not the agent of the city in the performance of the duties of his office in relation to streets and highways; and *Alcorn v. Philadelphia,* 44 Pa. St. 348; *Kansas City v. Brady,* 52 Kan. 297, 34 Pac. 884; *Goddard v. Harpswell,* 84 Me. 499, 24 Atl. 958, 30 Am. St. 373; *Cavanagh v. Boston,* 139 Mass. 426, 1 N. E. 834, 52 Am. Rep. 700; and Dillon, Mun. Corp. (4th ed.), § 978, are authorities cited to support his contention.

*Alcorn v. Philadelphia, supra,* was decided on the theory that it was not a duty incumbent on cities, in their corporate capacity, to provide for the survey of lots, the location of lines, etc., but a private one, falling upon the lot

owners themselves, and if injury resulted from the negligence or unskilfullness in the surveyor employed, the employer must look to him for redress.

In *Kansas City v. Brady, supra,* it is held that a city is only liable for acts of its officers performed in the line of their duties; and the fact that a city engineer planned a defective drain, to be constructed by private parties, which caved in and caused injury, does not impose any liability on the city. In that case the city had constructed a brick culvert or sewer, and it was the construction of another waterway for private individuals which was planned by the city engineer that caused the damage to the plaintiff's property. The case, it seems to us, in no way sustains the respondent's contention, but, on the other hand, rather implies that, if the conditions had been as they are in this case, and the engineer had been acting in the line of his duty, the city would have been responsible.

*Goddard v. Harpswell, supra,* is a case where the county commissioner laid out a town road; within the limits of the road thus located the plaintiff had, prior to the location, placed a certain amount of stone, timber, and earth with the consent of the owners of the land, for the purpose of constructing a road and bridge upon the same line afterward located by the commissioners. After the location and establishment of the road by the commissioners, the stone, timber, and earth that plaintiff left within the limits of the location were used in such construction. The plaintiff, assuming that the taking and using of the material was by the direction of the town or by its authorized agents, brought an action of trover against the town for such conversion. The case was decided upon the theory that there was no evidence in the case that the town ever voted to open or build the road or bridge, or appropriated any money, or

appointed any agents for that purpose, or gave any instruc-
tions to any officers, or in any way ever considered the ques-
tion. "Nor," said the court, "is there any evidence that
the municipal officers ever in any way took any direction
or cognizance of the matter;" and the court decided that,
in the absence of any evidence showing any action of the
town or its municipal officers in the premises, it would not
assume that such action had been taken. The case was de-
cided upon that theory; and as showing that such was the
theory upon which the case was decided, the court distin-
guished, *Hawks v. Charlemont,* 107 Mass. 414, where the
town voted to take charge, and appointed its selectmen as
agents with full discretion; *Deane v. Randolph,* 132 Mass.
475, where the town voted to put the selectmen in charge of
the work; *Doherty v. Braintree,* 148 Mass. 495, 20 N. E.
106, where the town voted to take charge of the work and
appointed a committee of five to act with the selectmen—
which, it will be noted, are similar in their facts to the case
under discussion, and which are cases sustaining appel-
lant's contention—from the case then before the court.

It may be here said, too, that, if the decision of the court
in that case had been put upon the ground claimed for it by
respondent, it would have been in conflict with the decision
of this court in *Wendel v. Spokane County,* 27 Wash. 121,
67 Pac. 576, 91 Am. St. 825, where we held the county
liable for damages caused by the act of its officers in drain-
ing a lake for the construction of a county road in such a
manner that it damaged the land of the plaintiff.

In *Cavanagh v. Boston, supra,* which was an action for
injuries occasioned by the construction of a dam across
South Bay, the case was decided against plaintiff squarely
on the proposition that the improvement was *ultra vires*—
that neither the board of health nor the city government

had any authority to abate the nuisance; the action being for damages in the erection of a dam for the purpose of abating a nuisance existing on adjacent land.

*Snyder v. Lexington,* 20 Ky. L. 1562, 49 S. W. 765, is a case where a mistake was made in the location of a line between the lot of the plaintiff and the street, and the plaintiff claimed damages by reason of having to remove the wall which he had erected on the proposed line. The court, however, in discussing it, said:

"The facts in this case show that the city replaced the sidewalk with a much better one than existed at the time the old one was torn up and the material carried away. Under such circumstances, it seems to us that the appellant has no cause to complain against the city. A concrete sidewalk was substituted for the brick one, which is more ornamental and quite as useful as the brick one."

In answer to the demand of the plaintiff that he should at least have damages for injury done to his fence, which the lower court had refused to allow him to prove, the court said:

"We do not think the court erred in this, because the engineer could not do anything which would deprive the city of its rights to one of its streets. If the city had brought an action against appellant in trespass, because he had placed his fence upon property belonging to the city, he might have pleaded the action of the engineer as a license to enter upon the city's property for the purpose of building the fence, and thus have avoided costs and damages."

So that it will be seen that, even in this case, the city was held liable to a certain extent for the mistake made in calculation by the city engineer.

It is, however, held in *Barney Dumping-Boat Co. v. Mayor,* 40 Fed. 50, that the commissioner of street cleaning

of the city of New York is an agent of the city, and not an officer of the general public, notwithstanding his duties are rendered partly in the interest of the public health, and his powers are plenary, and, within their sphere, exclusive of the authority of any other officer of the city; that the city is therefore liable for his negligent acts done in the course of his official duties. And this is in harmony with the unanimous decisions of this court. While to a certain extent the construction and maintenance of sidewalks and streets are police regulations, as, in a sense, is almost every other duty imposed upon municipal officers, yet, in accordance with the great weight of opinion, we have uniformly held that cities are responsible for the negligent acts of their officers in constructing or maintaining streets and sidewalks.

In *Sheffield v. Harris,* 101 Ala. 564, 14 South. 357, it is held that a municipal corporation is bound by the acts of its agents or employees; and where one has served a municipal corporation in the capacity of superintendent of certain work carried on by said city, and the municipal authorities have accepted such service and received the benefit of his skill and labor, the municipal corporation cannot avoid its responsibility for injuries resulting from his negligence in the doing of work within the scope of the service he was rendering, by denying the legality of his appointment.

In *Lee v. Sandy Hill,* 40 N. Y. 442, it was held that to render a municipal corporation liable for the tortious acts of its agents, it was enough that it should appear, either that they were expressly authorized by such corporation, or that they were done bona fide in pursuance of a general authority to act for the corporation on the subject in relation to which they were performed. In that case the charter of an incorporated village provided that its officers should be five trustees, and that such trustees should be commission-

ers of highways of the village, and have the same powers, and be subject to the same duties, as to the roads, streets and alleys of the village, as commissioners of highways in towns; and might lay out or alter any street or highway through, or upon, any garden, orchard, yard, or other lands in the village. Under a written resolution and order of such trustees, the overseer of highways wrongfully entered upon the land of the plaintiff, and moved back a fence erected by him in front of his lot; the trustees in making the order acting in good faith, erroneously supposing the plaintiff's fence was an encroachment upon the street, and that they were proceeding in pursuance of the power conferred upon them by the charter. Held, that the plaintiff could maintain trespass against the village for such removal, whether the trustees were to be regarded as mere agents of the corporation or whether it was the act of the corporation itself. These cases are in point in favor of appellant's contention.

But in addition to this, and outside of all discussion on the general proposition involved in the ordinary cases of neglect of corporate officers in enforcing police regulations, in this case the city, for its own benefit, entered into a civil contract with two separate contractors, viz., S. Normile, to whom was awarded a contract to improve First Avenue West, and Manney & Frazier, to whom was awarded the graveling of Broadway and Second Avenue West; and imposed upon appellant Normile the obligation to pay Manney & Frazier the amount of money which was estimated by the engineer to be due to said Manney & Frazier.. The city had a vital interest in this contract, for the value of the placing of this gravel in Broadway and Second Avenue West was evidently 35 cents per cubic yard, and, by the payment of 20 cents of this value by the appellant, the city was relieved of so large a disbursement, and obtained the

work done for 15 cents per cubic yard, payable on its part. So that it cannot be said that the contract was without consideration on the part of the city, for it was for the special benefit of the city that this contract was made. This is shown by the latter part of the agreement, viz:

"It is understood that this agreement is made for the purpose of enabling the said Manney and said Frazier to comply with their respective contracts with the city of Ballard for the improvements of Second Avenue West and Broadway respectively, the gravel for which is to be taken from First Avenue West from the contract awarded S. Normile; and, for this reason, this contract shall be construed together with the respective contracts for street improvement between the parties to this agreement."

The city, in said agreement, deemed it so essential to its interest that it incorporated a specific clause to the effect that it might require evidence to the effect that all labor and material had been fully paid for before the final estimate of the respective contractors had been made and paid for. So that, when the city engineer made the estimate of the amount which had to be paid under the contract by the appellant to Manney & Frazier, the payment of that amount had to be shown to the city before appellant could demand payment for the services performed by him. With such a contract between individuals no court would hesitate in holding all the parties responsible according to the terms of the contract. We see no reason why the city should escape because of its corporate capacity. The appellant performed his part of the contract, and the faithful performance of that part of the contract which was for the especial benefit of the city, through the negligence of the city engineer, was the cause of his loss. It was a loss in the interest of the city, and the city should be held responsible for the same.

The judgment is reversed, with instructions to overrule the demurrer to the complaint.

FULLERTON, C. J., and HADLEY, ANDERS, and MOUNT, JJ., concur.