Argued January 10, reversed February 8, rehearing denied March 7, 1916.

# HUMPHRY *v.* PORTLAND.*

### (154 Pac. 897.)

**Appeal and Error—Necessity—Bill of Exceptions.**

1. Where no bill of exceptions was obtained, the only question for review is whether the findings support the judgment notwithstanding a transcript of the entire testimony was brought up.

**Constitutional Law—Municipal Corporations—Remedies—Injuries to Persons on Streets—Liability of Municipality.**

2. Notwithstanding Article I, Section 10, of the Constitution, declares that a right of action to recover damages for an injury sustained cannot be abridged by legislation so as to deprive the injured party of all remedy, the Portland City charter (Sp. Laws 1903, p. 3), declaring that the city shall not be liable for injuries received from unsafe sidewalks, but imposing duty to keep sidewalks in repair and liability for injuries from defects on the abutting owner, and providing methods for enforcement of repair of sidewalks by city officials, is valid; the duty of maintaining walks in repair not being a hazardous undertaking which the city could not impose on abutting owners.

**Municipal Corporations—Sidewalks—Duty to Maintain.**

3. In the absence of statute, a city is liable to a person injured upon a defective walk, the repair of which it is incumbent upon the city to keep up, if the city has the means of performing that duty or is granted the right of taxation to perform it.

**Municipal Corporations — Injuries to Persons on Street — Liability of Municipality—"Governmental Duty."**

4. Though the Portland City charter required the city engineer to compel abutting owners to keep sidewalks in repair, that duty is a governmental rather than a corporate duty, the sidewalks as part of the highway being opened and improved for the benefit of all the public, so that the city is not, on the engineer's default, liable under the rule of *respondeat superior.*

**Municipal Corporations—Sidewalks—Liability of Engineer.**

5. As the Portland City charter imposed on the city engineer the duty of notifying abutting owners to repair defective walks to file an

---

*On the constitutionality of legislation relieving municipalities from liability for defects in streets or sidewalks, see note in 42 **L. R. A.** (N. S.) 493.

Generally on the duty and liability of municipalities in regard to sidewalks and highways, see note in 20 **L. R. A.** (N. S.) 516; specifically as to defects in sidewalks, see notes in 43 **L. R. A.** (N. S.) 1158; **L. R. A.** 1916B, 486.

The effect of imposition of duty to keep sidewalk in repair upon the abutting owner in imposing upon him liability for injuries is discussed in note in 3 **L. R. A.** (N. S.) 84.

Generally on the liability of highway officers, see notes in 22 **L. R. A.** 824; 52 **L. R. A.** (N. S.) 143.                    REPORTER.

affidavit with the auditor, who should thereupon mail notice to the owner, and to make repairs in case of the owner's default, the city engineer, though he posted notice is liable for injuries caused by a defective sidewalk, where the owner having defaulted, never having received notice by mail, though there was no money available for repair of the sidewalk; as in such case he might have discontinued the use of the street.

[As to a city's duty to furnish safe streets, see note in 103 Am. St. Rep. 260.]

**Municipal Corporations—Defective Sidewalks.**

6. Failure of city auditor to mail a notice to an abutting owner of the defective condition of a sidewalk in front of her premises as required by city charter relieves her from liability for resulting injuries to a pedestrian.

**Dismissal and Nonsuit—Effect of Dismissal.**

7. Where on trial plaintiff dismissed as to part of the defendants, such dismissal exonerates them from liability.

From Multnomah: HENRY L. BENSON, Judge.

In Banc.    Statement by MR. CHIEF JUSTICE MOORE.

This action was commenced February 11, 1913, by Anna Humphry against the City of Portland, the then members of the common council, the mayor and the engineer of that city, and Mary J. Reece, now Mrs. Frederickson, to recover damages for a personal injury. The facts are that on July 17, 1912, at about 9 o'clock in the evening, as the plaintiff and her husband were passing along a wooden sidewalk in front of and adjoining upon Mrs. Frederickson's premises, Mr. Humphry stepped on the end of a plank in the walk, causing the other end to rise and strike his wife, breaking in several places the bones of her right leg below the knee, from the effect of which fracture the limb has been shortened.

The pleadings set forth the provisions of the charter hereinafter quoted, and after the issues were joined the action was dismissed as to the mayor and councilmen, upon the motion of their attorney. Thereupon the cause was tried, without the intervention of a jury, and from the testimony given the court made findings

of fact in substance as follows: (1) That the City of Portland is a municipal corporation, that the city engineer had been duly appointed, and was legally qualified and acting at the time of the accident, and that Mrs. Frederickson was the owner in fee and in the possession of the lots, particularly describing them, in front of which was the defective sidewalk that caused the injury; (2) that the City of Portland, by the terms of its charter, has exclusive control over the sidewalks, and before any property owner is allowed to repair such walk he must secure a permit from the city engineer; (3) that from January, 1912, to July of that year the wooden sidewalk in front of Mrs. Frederickson's lots was defective and in a dangerous condition for pedestrians, which fact was then well known by the city engineer, but no repairs were made to the walk within those months; (4) that it is incumbent upon the City of Portland to keep the sidewalks in front of each lot in good repair and in a reasonably safe condition, but the city negligently failed to perform that duty; (5) that in January, 1912, the city engineer caused to be posted on Mrs. Frederickson's lot the necessary notice requiring the owner, agent or occupant of the premises immediately to repair the sidewalk in front thereof, and thereupon filed with the city auditor an affidavit of such posting, but no notice to repair was sent or mailed to Mrs. Frederickson, who did not know of the defective condition of the walk; (6) that from January, 1912, to and including July of that year the city engineer was not supplied by the City of Portland with sufficient men, material, money or means to repair the sidewalks then in use, and had during that time only one crew of men, which was wholly inadequate to make repairs to the sidewalks then in need thereof; (7) that on July 17, 1912, while

the plaintiff was walking along the sidewalk in front
of the designated lot, she was, without fault on her
part, violently thrown by a loose plank in the walk,
and, falling, sustained a permanent injury, which hurt
resulted from the negligence of the City of Portland,
whereby the plaintiff sustained damages in the sum of
$3,000; (8) and that on November 18, 1912, the City of
Portland and the members of its council were notified
of the plaintiff's claim for damages, as required by
the municipal charter, and more than 60 days elapsed
before this action was commenced.

Based on these findings, the court deduced conclu-
sions of law to the effect: (1) That, as it was incum-
bent upon the City of Portland to keep in a reasonably
safe condition and state of repair the sidewalk in front
of the designated lot, and since the municipality had
failed to perform that duty, in consequence of which
negligence the plaintiff was injured to the extent of
$3,000, she was entitled to a judgment against the city
for that sum; (2) that the plaintiff was not entitled to
a judgment against the city engineer; (3) and that she
had no right to a judgment against Mrs. Frederickson.
Predicated upon these findings, judgment was rendered
in accordance therewith against the city alone, and it
appeals.                REVERSED.  REHEARING DENIED.

For appellant there was a brief with oral arguments
by *Mr. Walter P. La Roche,* City Attorney, and *Mr.
Henry E. Davis,* Deputy City Attorney.

For respondent, Anna Humphry, there was a brief
over the names of *Messrs. Wilbur & Spencer, Mr. J. C.
Simmons* and *Mr. H. B. Becket,* with an oral argument
by *Mr. Becket.*

79 Or.—28

For respondent, Mary J. Reece-Frederickson, there was a brief filed by *Mr. Beemer S. Pague.*

For respondent, T. M. Hurlburt, City Engineer, there was a brief submitted over the name of *Messrs. Hurlburt & Layton.*

Opinion by MR. CHIEF JUSTICE MOORE.

1. Though a complete transcript of the entire testimony received at the trial has been brought up, no bill of exceptions was obtained, and in the absence thereof the only question to be considered is whether or not the findings of fact support the judgment: *Allen* v. *Leavens,* 26 Or. 164 (37 Pac. 488, 46 Am. St. Rep. 613, 26 L. R. A. 620); *Miller* v. *Head Camp,* 45 Or. 192 (77 Pac. 83); *Lewis* v. *Clark,* 66 Or. 461 (134 Pac. 1194).

2, 3. It becomes important to set forth some of the clauses of the charter of the City of Portland in force when the injury occurred, as found in the Special Laws of Oregon of 1903, page 3, and following. These provisions, as far as material herein, read:

"No recourse shall be had against the city for damage or loss to person or property suffered or sustained by reason of the defective condition of any sidewalk; * * nor shall there be any recourse against the city for want of repair of any sidewalk; * * nor shall there be any recourse against the city for damage to person or property suffered or sustained by reason of accident on sidewalk; * * but in such case the person or persons on whom the law may have imposed the obligation to repair such defect in the sidewalk, * * and also the officer or officers through whose official negligence such defect remains unrepaired shall be jointly and severally liable to the party injured for the damage sustained": Section 8.

"It is hereby made the duty of all owners of land adjoining any street in the City of Portland to con-

struct, reconstruct, and maintain in good repair, the sidewalks in front of said lands. * * If the owner of any lot or part thereof, or parcel of land, shall suffer any sidewalk along the same to become out of repair, it shall be the duty of the city engineer to post a notice on the adjacent property, headed 'Notice to Repair Sidewalk,' in letters not less than one inch in length, and said notice shall in legible characters direct the owner, agent, or occupant of said property immediately to repair the same in a good and substantial manner, and the city engineer shall file with the auditor an affidavit of the posting of such notice, stating the date when and the place where the same was posted. The auditor shall, upon receiving the affidavits of the city engineer, send by mail a notice to repair said sidewalk to the owner (if known) of such property, or to the agent (if known) of the owner, and directed to the post-office address of such owner or agent, when such post-office address is known to the auditor, and if such post-office address be unknown to the auditor, such notice shall be directed to such owner or agent at Portland, Oregon'': Section 384.

''The owner, agent, or occupant, before making said repairs, shall obtain from the city engineer a permit so to do, * * and the owner, agent, or occupant shall make said repairs within twenty days from the date of posting said notice. If the owner, agent, or occupant of any such lot or part thereof, or parcel of land, shall fail, neglect, or refuse to make the sidewalk repairs within the time designated, the city engineer shall make the same, and keep an accurate account of the cost of the labor and materials in making the repairs in front of each lot or parcel of land, and shall report monthly to the executive board, the cost of such repairs, and a description of the lot or part thereof, or parcel of land, fronting on the sidewalk upon which such repairs are made'': Section 385.

''The executive board shall exercise the same general authority and supervision over sidewalk repairs that it shall have in the matter of street improvements; it shall inspect the reports of sidewalk repairs, and the

cost thereof, made by the city engineer, and if it deems the same to be reasonable, it shall approve the same and transmit them to the council. The council shall, at least once each year, by ordinance, assess upon each of the lots or parts thereof, or parcels of land fronting upon sidewalks, which have been so repaired, the cost of making such repairs as approved by the executive board * * '': Section 386.

"Moneys to repair sidewalks when the repair shall be made by the city engineer under this charter, may, at the discretion of the council, be advanced from the street repair fund, to be reimbursed by the special assessment when collected'': Section 387.

"It is not only the duty of all owners of land within the city to keep in repair all sidewalks, constructed or existing in front of, along, or abutting upon their respective lots or parts thereof, and parcels of land, but such owners are hereby declared to be liable for all damages to whomsoever resulting, arising from their fault or negligence in failing to put any such sidewalk in repair, after the owner or agent thereof has been notified as provided in this charter so to do; and no action shall be maintained against the City of Portland by any person injured through or by means of any defect in any sidewalk'': Section 388.

It is contended by defendant's counsel that, the charter having imposed the duty to keep sidewalks in repair upon the abutting owners, the common council and the city engineer, and exempted the municipality from all liability to any person for an injury suffered in consequence of a defective sidewalk, an error was committed in rendering judgment against the city. In support of the principle thus asserted it is argued that, in the absence of a statute imposing the accountability, a municipal corporation, as an agency of the state for governmental purposes, is not liable in damages to a party who sustains an injury by reason of a defective sidewalk, and that Article I, Section 10, of the Con-

stitution of Oregon, declaring that "every man shall have remedy by due course of law for injury done him in his person, property or reputation," has no application to an action of this kind, since at the common law no remedy against a municipal corporation to recover damages for a personal injury caused by a defective highway existed.

A noted author, in discussing the question of unsafe highways as arranged by the decisions on this subject by courts in the United States, remarks:

"The cases may be grouped into the following classes: First. Where neither chartered cities nor counties or other *quasi* corporations are held to an implied civil liability. Only a few states have adopted this extreme view of exempting cities from liability in this respect. Second. Where the reverse is held, and both chartered cities and counties are alike considered to be impliedly liable for their neglect of the duty in question. This doctrine prevails in a small number of states. Third. Where municipal corporations proper, such as chartered cities, are held to an implied civil liability for damages caused to travelers for defective and unsafe streets under their control, but denying that such a liability attaches to counties or other *quasi* corporations as respects highways and bridges under their charge. This distinction has received judicial sanction in a large majority of the states, where the legislation is silent in respect of corporate liability": Dillon, Mun. Corp. (4 ed.), § 999.

The third class thus specified has been adopted in Oregon. Thus in *Templeton* v. *Linn County,* 22 Or. 313 (29 Pac. 795, 15 L. R. A. 730), it was held by a majority of the court that at common law a county was not liable for an injury resulting from a defect of its highways. In a very able dissenting opinion, however, Mr. Justice LORD maintained that upon the organization of a county a duty devolved upon it to

keep the highways within its borders in repair, to perform which obligation the *quasi* corporation was empowered to levy and collect taxes; that a breach of that duty necessarily imposed upon the county a liability for the resulting damages to recover which the common law supplied a remedy, whether or not it was expressly given by statute; and that Article I, Section 10, of the organic law of the state, placed it beyond the power of the legislature to take away remedies that existed when the Constitution was adopted. At its next session, after that decision was rendered, the legislative assembly enacted a statute providing for the recovery from counties of a limited sum as compensatory damages by persons injured in consequence of defective roads or bridges: *McFerren* v. *Umatilla County,* 27 Or. 311 (40 Pac. 1013). Another act is now in force giving greater compensation in such cases: Section 6375, L. O. L.

In *Mattson* v. *Astoria,* 39 Or. 577, 580 (65 Pac. 1066, 87 Am. St. Rep. 687), a municipal charter having provided that "neither the City of Astoria nor any member of the council thereof shall in any manner be held liable for any damages resulting from a defective condition of any street, alley, or highway thereof," it was determined, in construing such excerpt, that while it was within the power of the legislature to exempt a city from liability for damages sustained in consequence of an unsafe street, a party injured by reason of the defect might proceed personally against the officer to whom the charter delegated the duty of repairing the highway, and by whose negligence the injury resulted, notwithstanding such attempted exoneration from liability.

In *Batdorff* v. *Oregon City,* 53 Or. 402, 405 (100 Pac. 937, 938, 18 Ann. Cas. 287), it is said:

"Though there is a conflict of judicial utterance as to the common-law liability of a city for a failure to keep a street in repair, the weight of authority supports the principle that, when a charter invests a municipal corporation with exclusive control over the streets within its limits, and authorizes it to employ the means necessary to improve and maintain such highways, a duty to the public arises by implication of law to keep the streets that have been opened for travel in a reasonably safe condition; and for any injury that may result from a failure to discharge such obligation the city, without any statutory provision to that effect, must respond in damages."

In referring to what is now Section 358, L. O. L., it is further observed:

"Our statute re-enacts this rule of the common law, and authorizes the maintenance of an action against any city in its corporate capacity for an injury to the rights of a party arising from some act or omission of the municipality."

See the notes to this case in 18 Ann. Cas. 287.

In *Pullen* v. *Eugene,* 77 Or. 320 (146 Pac. 822, 147 Pac. 768), in construing a provision of a municipal charter which declared, "The City of Eugene shall not in any event be liable in damages to any person for an injury caused by any defect or dangerous place at or in any sidewalk, * * unless the mayor, chairman of the street committee, or street commissioner shall have had actual notice of such defect or dangerous place, and a reasonable time thereafter in which to repair or remove such defect or dangerous place before the happening of such accident or injury, and in no case shall more than $100 be recovered as damages from the city for any such accident or injury," it was held that, if a recovery of more than $100 for any injury resulting from a defective sidewalk was under-

taken, the action must be against the city officers by whose neglect the defect continued.

As tending to show the liability of a municipal corporation to a person who has sustained an injury by reason of an unsafe street, see the notes to the cases of *Browning* v. *City of Springfield,* 63 Am. Dec. 345; *Goddard* v. *Inhabitants of Harpswell,* 30 Am. St. Rep. 373; *Sundell* v. *Tintah,* Ann. Cas. 1913C, 1311. By analogy and based on the doctrine asserted by Judge Deady in *Eastman* v. *Clackamas County* (C. C.), 32 Fed. 24, and recognized by Mr. Justice Lord in *Templeton* v. *Linn County,* 22 Or. 313, 321 (29 Pac. 795, 15 L. R. A. 730), we conclude a municipal corporation, in the absence of any statute governing the matter, is liable to a person sustaining an injury from a defective street or sidewalk, the repair of which it is incumbent upon the city to keep up, if it have the means of performing that duty or is granted the right of taxation or given the power of levying a special assessment for that purpose, and we adhere to the rule, heretofore asserted, that under Article I, Section 10, of the Constitution of Oregon, a right of action to recover damages for an injury thus sustained cannot be so abridged by legislation as to deprive the injured party of all remedy. It is conceded, however, that by proper enactment the liability thus imposed upon a municipal corporation may be shifted to its officers or agents.

It is contended by plaintiff's counsel that the rule announced in *Pullen* v. *Eugene* is not controlling herein. In support of the principle so asserted reliance is had upon the case of *McAllister* v. *Albany,* 18 Or. 426 (23 Pac. 845), where it was ruled that a municipal corporation could not escape liability for a personal injury by letting to a contractor any work the performance of which was intrinsically dangerous.

The rule there recognized is analogous to the doctrine of the continued liability of a contractor to respond in damages for an injury resulting from letting to an independent contractor any work the performance of which is necessarily hazardous. Thus in *Winniford* v. *MacLeod,* 68 Or. 301, 306 (136 Pac. 25, 27), Mr. Justice BURNETT, discussing this subject, says:

"The general rule is that, where work is committed in all its details to a contractor, and he is responsible to his employer, not for details, but only for a finished result, the former alone is answerable for injury happening to third parties in the prosecution of the work. There are exceptions to this rule. The employer must also respond if the manner provided for carrying out the contract is in itself dangerous, or if the project is manifestly dangerous to others, and an injury ensues on account of either the method prescribed or the nature of the undertaking itself."

See, also, *Dibert* v. *Giebisch,* 74 Or. 64 (144 Pac. 1184).

In the case at bar it is difficult to see how the repair of a sidewalk involved any work the performance of which was so intrinsically dangerous as to render the city liable for the resulting damages, notwithstanding the exemption clause of the charter.

The facts involved in the case of *McAllister* v. *Albany,* 18 Or. 426 (23 Pac. 845), are thus stated in the opinion:

"This is an action to recover damages for injuries sustained by the plaintiff in consequence of a ditch dug across a certain street of said city for the construction of a sewer being left open and without lights or guards, and into which the plaintiff drove his team and seriously injured himself and team."

In commenting upon the discretion of local authorities, a text-writer observes:

"Whether this right of municipal corporations to construct drains and sewers shall be exercised in any particular case or not, as well as the manner in which it shall be exercised, must be determined by the corporation, and not by the courts. When, however, the corporation has ordered the construction of a sewer, and has entered upon the prosecution of the work, its duty becomes ministerial, and, 'where a judicial duty ends and ministerial duty begins, their [there] immunity ceases, and liability attaches' ": Elliott, Roads & Streets (3 ed.), § 560.

To the same effect see, also, 28 Cyc. 1315.

It will thus be seen that, if the injury complained of in *McAllister* v. *Albany,* 18 Or. 426 (23 Pac. 845), had resulted from the negligence of that defendant, and not from the carelessness of an independent contractor, it is quite probable a judgment might have been rendered against the city upon the facts so stated. But, however this may be, the principle there recognized, or the rule which possibly might have been enforced therein, cannot be invoked to govern the decision in the case at bar.

4. It is maintained by plaintiff's counsel that, the obligation to repair sidewalks having been imposed by the charter upon the city engineer, he is to be regarded, not as an independent public officer, but as the agent of the municipality, and for any failure to perform that duty, whereby an injury has been sustained by another, the city is liable for the ensuing damages, and hence the judgment should be affirmed. It has been held by some courts that, where the duty rests upon a city to keep its streets in a safe condition for public use, and the officer who is required to perform that obligation fails in this particular, whereby injury results, a recovery may be had against the city for the damages suffered, upon the principle of *respondeat superior:*

*Conrad* v. *Trustees,* 16 N. Y. 158; *Hall* v. *City of Austin,* 73 Minn. 134 (75 N. W. 1121); *Ehrgott* v. *Mayor etc.,* 96 N. Y. 264 (48 Am. Rep. 622); *Missano* v. *Mayor etc.,* 160 N. Y. 123 (54 N. E. 744); *Normile* v. *City of Ballard,* 33 Wash. 369 (74 Pac. 566).

A well-recognized distinction exists between a *quasi* corporation, such as a county, and a municipal corporation, such as a city, in respect to the liability of each to persons injured by neglect of duty by the agents or officers of either: Dillon, Mun. Corp. (4 ed.), §§ 26, 966. Whatever the rule may be in other states, it has been repeatedly held in Oregon that a municipal corporation, in performing the duties imposed upon or delegated to it, exercises a private, proprietary function for the benefit of its inhabitants alone, and known as a ministerial duty, and also discharges a governmental obligation, in the performance of which it acts as an agent of the state and for the entire public, and when a city, incorporated village, or town is employing the latter power in good faith, it is exempt from liability for damages; but, when performing the former function, the rule of *respondeat superior* governs in respect to an injury occasioned by the negligence of the officers and agents of the municipal corporation: *Esberg Cigar Co.* v. *Portland,* 34 Or. 282 (55 Pac. 961, 75 Am. St. Rep. 651, 43 L. R. A. 435); *Shipley* v. *Hacheney,* 34 Or. 303 (55 Pac. 971); *Wagner* v. *Portland,* 40 Or. 390 (60 Pac. 985, 67 Pac. 300); *Pacific Paper Co.* v. *Portland,* 68 Or. 120 (135 Pac. 871); *Blake-McFall Co.* v. *Portland,* 68 Or. 126 (135 Pac. 873); *Coleman* v. *La Grande,* 73 Or. 521 (144 Pac. 468).

In *Dyer* v. *Danbury,* 85 Conn. 128 (81 Atl. 958, Ann. Cas. 1913A, 784, 786, 39 L. R. A. (N. S.) 405), Mr. Justice THAYER, in distinguishing between governmental

duties enjoined upon a municipal corporation and ministerial obligations performed by it, says:

"For the nonperformance or misperformance of a merely governmental duty imposed upon a city or town it is not liable in damages unless a right of action against it is given by statute. * * Where, however, some special power or privilege out of which grow public duties, primarily for the benefit of its own citizens, is granted to a municipality at its request, or where with its consent some special duty not belonging to it under the general laws is imposed upon it, the case is different. In such cases the municipality is in a sense performing a private duty, and, although no liability for damages is imposed by statute for negligence in the performance of such duties, the municipality is nevertheless liable for it."

County roads and city streets and sidewalks, when once constructed, are for the benefit of all people who may have occasion to travel or pass along or across such highways, the duty to repair which is also imposed upon the municipal corporation for the benefit of the entire public, and not for the sole advantage of the citizens residing in the immediate neighborhood specially benefited thereby. A distinguished author, commenting upon this legal principle, remarks:

"It cannot be justly said that the regulation and control of highways is not a governmental matter, for it was so in the earliest years of the common law, and, indeed, long before the common law took form and force": Elliott, Roads & Streets (3 ed.), § 496.

"Where a public corporation," says this text-writer in another section of the work mentioned, "is selected and employed as an agent of the state to perform a duty pertaining to purely state affairs, whether it be a city or a county, it cannot be liable to private action. The reason for this is not far to seek. In discharging such a state duty it stands in the place of the state as its instrument or agent": Id., § 538.

McQuillin, in his work on Municipal Corporations, Section 2721, in discussing this subject, asserts:

''On the theory that the repair and regulation of streets is a governmental duty, it is expressly held that the municipality is not liable for defective streets at common law in Arkansas, California, Connecticut, Maine, Massachusetts, Michigan, New Jersey, Rhode Island, South Carolina, and Vermont.''

See, also, Id., § 2623.

The rule thus asserted, though in conflict with some judicial expression upon the subject, is supported by the great weight of authority.

The principle so adverted to is not in conflict with the opinion on rehearing in the case of *Giaconi* v. *Astoria,* 60 Or. 12 (113 Pac. 855, 118 Pac. 180), though the writer did not concur therein. In that case in opening a new street an embankment of earth slid down upon the plaintiff's land, causing injury, and it was ruled that the city by reason of the negligence of its officers was liable for the resulting damages. The dedication of streets, as evidenced by a duly recorded plat, and the sale of lots in accordance therewith, does not require the immediate opening of any of the highways until in the discretion of the local authorities it is determined that the interests of the public demand such improvements should be made: Elliott, Roads & Streets (3 ed.), §§ 129, 570. In another section of his work this author, in speaking of the liability of a municipal corporation for negligence, says:

''Outside of the New England states and those states which follow the New England rule, the doctrine is that there is a liability for a failure to exercise ordinary care and skill in making the improvement; for, once the ministerial act is undertaken, such reasonable care and skill must be exercised as will not only make

the highway safe for passage, but will prevent injury to adjoining property'': Id., § 580.

When a street has once been opened and improved so as to be turned over to the state to be used by the public generally, the cost of repairing such highway is usually payable out of the general fund, and the municipality is not generally authorized to make a special assessment against abutting property to defray the expense incurred therefor: Id., § 647. When a street is being originally opened, and before it is theoretically surrendered to the state, the obligation to complete the highway is only ministerial, in the exercise of which engagement the city is held responsible in damages for the negligence of its officers and agents on the ground that the right of the public to the use of the street has not attached. When, however, a street is once completed and devoted to its intended use, the duty thereafter to keep it reasonably safe devolves upon the municipal corporation to see that the highway, until it is legally discontinued, remains in a suitable condition for travel. It is incumbent, therefore, upon a city to keep its improved streets in reasonable repair, and in discharging that obligation the municipal corporation necessarily exercises a governmental duty for the benefit of the general public: Id., § 803. It will thus be seen that the prevailing opinion in the case of *Giaconi* v. *Astoria,* 60 Or. 12 (113 Pac. 855, 118 Pac. 180), does not lack the support of reason or authority.

In the case at bar, however, the street had been opened and improved, and the sidewalk, which necessarily constitutes a part of the highway for the accommodation of pedestrians, had been put down, but was out of repair, so that the restoration thereof was a governmental duty enjoined upon the city for the benefit of the public in general. In failing to discharge that ob-

ligation the city engineer omitted the performance of a governmental duty by reason whereof the City of Portland is not liable for the damages which resulted from the injury.

5. It will be remembered the court found that it was the lack of money which prevented the city engineer from making the necessary repairs. A text-writer, in discussing this subject, asserts:

"The want of funds, and of power to raise money to enforce contributions of labor, or to assess the expense of repair upon abutters, is a good defense to a charge of negligence for nonrepair, provided it is shown that all the funds applicable to such use, and all means of raising more, have been exhausted. But want of funds is not available as a defense to a charge of negligence in not erecting barriers on a dangerous street, or not closing the street altogether, when necessary": Shearman & Redfield, Neg. (6 ed.), § 374.

It will be observed, from the excerpt quoted, that a greater degree of effort for the repair of a street or sidewalk is demanded from municipal officers than is evidenced by the finding referred to, which is insufficient to relieve the city engineer from liability.

6. The failure of the city auditor to mail to Mrs. Frederickson a notice of the defective condition of the walk in front of her premises as found by the court exonerates her from accountability for any part of the damages which the plaintiff sustained.

7. At the trial of this cause the action, by consent of counsel for the respective parties, was dismissed as to the defendants Geo. L. Baker, John H. Burgard, Ralph C. Clyde, Will H. Daly, Geo. D. Dunning, J. J. Jennings, Allan R. Joy, James Maguire, R. E. Menefee, Tom. N. Monks, John Montag, Wm. Schmeer, H. N. Wallace, Frank E. Watkins and F. L. Wilhelm, who at the time of the plaintiff's injury composed the common

council of the City of Portland, and as to A. G. Rush-light, who then was its mayor. This voluntary discharge necessarily releases each of these parties from any and all liability on account of the negligence set forth in the complaint.

The findings of fact, when tested by the provision of the charter, do not uphold the conclusions of law predicated thereon, except in respect to Mrs. Frederickson. The judgment is therefore reversed, and the cause remanded for a new trial as to the defendant T. M. Hurlburt, who at the time the plaintiff was hurt was the city engineer, and for such further proceedings as may be necessary not inconsistent with this opinion.

Reversed. Rehearing Denied.

Mr. Justice Benson and Mr. Justice Eakin took no part in the consideration of this case.

Mr. Justice Harris concurs in the result.

Mr. Justice Bean dissents.