## A. A. FINK, RESPONDENT, *v.* CANYON ROAD COMPANY, APPELLANT.

CORPORATIONS—TENDENCY OF DECISIONS CONCERNING.—The tendency of modern decisions is to assimilate the actions, rights, duties and liabilities of private corporations to those of individuals and of commercial partnerships.

PRESUMPTIONS IN FAVOR OF CORPORATIONS.—In the absence of proof, courts cannot disregard as illegal or unauthorized the dealings and acts of private corporations which, on their face, or according to their apparent import, are within their charters or articles.

IDEM.—Artificial bodies, like natural persons, are entitled to the benefit of the rule which imputes honesty rather than wrong to the conduct of men.

ACTS OF AGENTS.—Corporations are bound by their simple contracts and by other acts of their officers and agents performed in the discharge of their ordinary duties.

FINDINGS BY THE COURT.—Where the cause is tried by the court without the intervention of a jury, the findings must be sufficient to sustain the judgment, and must cover all the material issues.

APPEAL from Douglas County.

The complaint alleges that the Canyon Road Company is a private corporation; that on November 9, 1868, it was indebted to one Rose in the sum of fifty dollars coin, and by

its secretary, duly authorized thereto, drew its draft or order in writing, directed to its treasurer, in favor of said Rose, or bearer, for fifty dollars; that said draft or order was duly delivered to Rose, who, for a value, afterwards transferred and delivered it to Fink, who is now the owner and holder thereof; that said draft was duly presented to said treasurer and by him indorsed, "Not paid for want of funds," and that there is now due and payable from said company to said Fink the sum of fifty dollars and interest from the date of presentment.

A second cause of action upon another draft of the same character and amount is similarly stated.

The defendant denied the indebtedness, the authority of its secretary to draw the draft; denied that it was transferred for value, or that Fink was owner and holder, or that any sum was due or payable thereon. The answer also alleges that the order was issued without authority or consent of the company, out of its regular course of business, "and without consideration to it;" that it was received by Fink after its maturity and with notice and knowledge of the facts pleaded.

Similar answer is made to the second cause of action.

The reply denies all the new matter set up in the answer.

By consent of the parties in open court a jury was waived, and the cause was tried by the court. After hearing proofs and argument, the court below found as follows:

1. That the defendant was and is a private corporation, duly incorporated under the laws of the State of Oregon.

2. That they incorporated for the purpose of constructing and maintaining a toll-road through the canyon in Douglas County, Oregon.

3. That on the 9th day of November, 1868, said corporation issued and delivered to one Aaron Rose a warrant or order, of which the following is a copy:

No. 581.]                "ROSEBURG, OREGON, Nov. 9, 1868.    [$50.
*To the Treasurer of the Canyon Road Company:*

Pay to Aaron Rose, or bearer, fifty (coin) dollars, for expenses attending meeting.   By order of Board of Directors.

"WM. R. WILLIS,
"President C. R. C.

"I certify that the above is correct.

"S. F. CHADWICK,
"Secretary C. R. C."

4. That on the 21st day of May, 1869, defendant issued another order, copy of the above, except dates.

5. That on the back of each of said orders is the following indorsement:

"Presented and not paid for want of funds.

"SOL. ABRAHAM,
"Treasurer C. R. C."

6. That the plaintiff herein became the owner and holder of said warrants or orders, for value, prior to the commencement of this action.

Upon these findings of fact the court below entered judgment in favor of Fink and against said company for one hundred and fourteen dollars and fifty cents in coin.

From this judgment an appeal was taken and numerous errors are alleged.

*Watson & Lane and William R. Willis,* for Appellant, claim:

1. That the facts found by the court are not sufficient to entitle the plaintiff to a judgment. (*Clark* v. *Des Moines*, 6 Am. L. R. 146 and note; Abb. Dig. Law of Cor., pp. 283, 288, §§ 60, 101.)

2. That the court should have passed upon all the issues, and not having done so the judgment should be reversed. (5 Bos. 658, 663; 6 Id. 668; 61 Pa. 352; 10 Wis. 418; Code, §§ 216, 217.)

3. A party dealing with the officers of a corporation is bound to know what authority they have. (*Adrian* v. *Roome*, 52 Barb. 399, 410, 411; *McCullough* v. *Moss*, 5 Denio, 567.)

*J. F. Gazley and W. W. Thayer,* for Respondent, claim:

1. That the answer tenders no issue except as to the negotiation of the drafts to respondent.

2. That the drafts were in legal effect the promissory notes of the company, and were obligatory upon it. (15 N. Y. 337; Ang. & Ames on Cor., p. 254, § 268.)

3. That the court passed upon all the material issues.

By the Court, McARTHUR, J.:

The instruments declared on are orders by the company on itself—mere directions to its treasurer to pay the amounts indicated to the bearer. In legal effect they are the promissory notes of the company. (*Fairchild* v. *O. C. & R. R. Co.,* 15 N. Y. 337.)

We cannot adopt the views of appellant's counsel and decide the issuance of instruments of this character, by the company, *ultra vires,* because in issuing them the company exercised incidental powers which are within, or rather grow out of the general powers of corporations of this class. The doctrine of *Clark* v. *Des Moines* (6 Am. L. R.), which is, that in case of a municipal corporation a person taking its warrants is bound at his peril to ascertain the nature and extent of the power of the officers of the corporation, cannot apply herein to the extent claimed by appellant's counsel, for the reason that this is not a municipal corporation. The law applicable to municipal corporations is, in many respects, different from that governing private corporations. Private corporations act through their agents, as do municipal corporations, but the tendency of modern decisions is to assimilate the actions, rights, duties and liabilities of private corporations to those of individuals and of commercial partnership. (*Conro* v. *Port Henry Iron Co.,* 12 Barb. 64.)

Courts cannot disregard as illegal or unauthorized the dealings and the acts of private corporations which, on their face, or according to their apparent import, are within their charter or articles. In the absence of proof there is no legal presumption that the law has been violated. On

the contrary, artificial bodies, like natural persons, are entitled to the benefit of the rule which imports honesty rather than wrong to the conduct of men. (*Chautauqua Co. Bank* v. *Risley*, 19 N. Y. 381.)

In *Safford* v. *Wyckoff* (4 Hill, 442), the action was against a banking association upon a draft or bill of exchange. Chancellor Walworth, while dissenting upon another ground, said: "Where a corporation is authorized to give a negotiable security for any purpose, and there is nothing to show for what the particular security was given, if there is nothing on the face of the instrument itself to create a suspicion that it was issued for an illegal object, the court will presume that it was given for a legitimate purpose rather than for one which was unauthorized and illegal."

Corporations are certainly bound by their simple contracts, and by other acts of their officers and agents made and performed in the discharge of their ordinary duties; and the courts have carried this doctrine so far as to hold that they may take notice of the general nature of the duties of a cashier in and about a banking office, and, without evidence of usage or express authority, hold him authorized to do all incidental acts necessary to the performance of those general duties. (*Watson* v. *Bennett et al.*, 12 Barb. 196.) This case is cited more to show the tendency of modern decisions than from any present applicability. It presses close upon the very verge of the law, and further we think the courts ought not to go. In Angell & Ames on Corporations (p. 292), the law is well stated to be, that unless the act of incorporation expressly prescribe the contrary, the duly authorized agents of corporations, as of natural persons, may, within the scope of their authority, bind them by simple as well as by sealed contracts; and that, too, in both cases, whether authorized by deed or vote; and from their acts or conduct, as well as from the acts or conduct of the agents of natural persons, implications may be made, either for or against their constituents. These general rules are applicable alike to those corporations formed under general incorporation laws and those created by legislative charter.

In *Fister* v. *La Rue* (15 Barb. 323), the analogies to be drawn from which are applicable to the case in hand, the plaintiff brought her action in a justice's court against the trustees of a school district. She was employed by one of the trustees only, after consulting the others separately and obtaining their permission to teach the district school for six weeks. All three of the trustees sent children to school, as did the district generally. The defense was a denial of the services and payment. The plaintiff had a verdict. An appeal was prosecuted to the County Court, in pursuance of a statute of the State of New York, and the judgment of the justice was reversed for the following, among other · reasons, that it did not appear, from the justice's return, that the defendants had employed the plaintiff to teach, at a legal meeting of all their number for that purpose, or at a meeting of a majority of the defendants after notice to all. This, the Supreme Court held to be erroneous, and held further that no such proof was necessary in a case like this, where the action was brought upon an executed contract to recover for services rendered under it. It is well settled, at least in this country, that where a person is employed for a corporation, by one assuming to act in its behalf, and goes on and renders the services according to the agreement, with the knowledge of its officers, and without notice that the contract is not recognized as valid and binding, such corporation will be held to have sanctioned and ratified the contract, and be compelled to pay for the services according to agreement. Having availed itself of the services, and received the benefits, it is bound in conscience to pay, and will not be heard to say that the original agreement was not made by a person legally authorized to contract. In the same case it is well said that the law raises the same presumptions against corporations, in such cases, as against natural persons.

In this case, we think the road company is estopped to deny the regularity, as well as the legality of its acts in issuing the orders declared on. They were drawn by the secretary, signed by the president and indorsed by the treasurer. To lay down a principle which would permit

these officers now to deny their own solemn act, and shield themselves behind the doctrine of *ultra vires*, would be substantially investing them with power at their own pleasure to avoid the consequences of their own acts, and at the same time render all who have performed any sort of labor or service for them, and received orders of this kind, remediless. If no reliance is to be placed upon, and no credit given to, the drafts or orders of a private corporation, which are *prima facie* regularly executed, and issued in pursuance of a power directly conferred, or of a clearly incidental and necessary power, attested by the signatures of their officers, upon whom the control of their affairs is devolved by law, upon what can reliance be placed? (37 Cal. 598.)

"This is one of the most direct, formal and solemn assurances that can possibly be given. It is one of the legally appointed modes in which a large class of private corporations deal with the world and establish credit. When a draft or order of this kind finds its way into the market, and is purchased by a stranger, he, and the commercial world generally, has little opportunity or means of ascertaining the circumstances under which it was drawn or issued. No opportunity is afforded a stranger to examine the books, papers and proceedings of a private corporation, for they are private property. Whenever the corporation acts, it is through its agents, and if their formal assurances and solemn signatures are not reliable, then none of their acts can be depended on, and those dealing with them are absolutely without adequate protection. The rule stated, not only rests upon principle and authority, but is founded upon common honesty and solid sense."

In *McCullough* v. *Moss* (5 Denio, 577), it is said that the right of a corporation to make a promissory note for a debt incurred in the course of its business, although not expressly authorized to contract in that form, appears to be conceded in our courts, citing 1 Cow. 513, and 9 Paige, 470. As this case was cited and relied upon by appellant's counsel, I have examined it with great care, and am unable to discover that the opinions of the different Senators war-

rant the conclusions of the reporter, as expressed in the syllabus, save the one just set forth.

The following analysis of the case made by Willard, J., and forming part of the opinion of the court in *Moss* v. *McCullough* (7 Barb. 284), shows what was really decided, and the consequences of the decision: "Gardiner, the Lieutenant-Governor, expressed the opinion—(1.) That the circuit judge erred in refusing to submit to the jury the question, whether a part of the consideration of the note did not accrue before the defendant became a stockholder, and that for such refusal the judgment should be reversed and a new trial awarded. (2.) He intimates that the stockholder is a guarantor for the company, and that the action should be brought in the name of the original party to the note, and that this liability was not negotiable. (3.) His third objection to the ruling of the circuit judge is substantially like the first, viz., that there was evidence to show that a part of the damages which were included in the note accrued before the defendant became a stockholder. (4.) He inclined to the opinion that an entire agreement could not be divided.

"If the judgment of the Supreme Court was reversed, for the first or third reasons assigned by Gardiner, Lieutenant-Governor, the court below should not have nonsuited the plaintiff, but have submitted the question of fact to the jury. And if the judgment was reversed for the second reason, it should have been final, and no *venire de novo* should have been awarded.

"The opinion of Mr. Senator Lott decides:

"1. That the plaintiff did not show on the trial that the note in question was executed by the authority of the corporation.

"2. That the evidence of its subsequent ratification was insufficient.

"3. That the note was not obligatory upon the company, because it was not given in the legitimate course of their business. They had no right to buy a farm, a school-house, or threshing-machine, etc.

"4. That the question whether a part of the consideration

of the note accrued prior to the defendant's becoming a stockholder, should have been submitted to the jury.

"A reversal of the judgment for the first, second or fourth reason would not have concluded the judge trying the cause, unless the testimony was the same as on a former trial. But the testimony on the last trial was much stronger for the plaintiff than on the preceding trial, and should, I think, have carried the cause to the jury on the principles contained in Senator Lott's first, second and fourth reasons. A reversal for the third reason should have been final, because, if true, it showed that the plaintiff had no cause of action.

"Mr. Senator Putnam, in his opinion, repudiates the notion of guarantee put forth in the opinion of Lieutenant-Governor Gardiner. He thinks:

"1. The plaintiff, in the first place, had not shown any authority in the officers of the company to give the note.

"2. That the defendant was not liable, because he was not a stockholder at the time this suit was commenced.

"3. That the consideration of the note was illegal, as it was given in part for property which had no connection with the business of the corporation.

"If the judgment was reversed for the first objection, there should have been a new trial; and if the testimony, as to the authority to give the note, was materially strengthened, the cause should have been submitted to the jury. If it was reversed for the last two objections, it should have been final.

"Mr. Senator Barlow went for an affirmance of the judgment, thus concurring in substance with the Supreme Court. He also expresses the opinion that the judgment against the company finally settled every question as to the validity of the note, and that the defendant could not go back of that judgment and take issue upon the liability of the company; thus concurring with Chief Justice Spencer, in *Slee* v. *Bloom* (20 John, 669). Seven other senators concurred with him.

"The fact that a *venire de novo* was awarded, affords decisive evidence that a majority of the court did not concur

with the Lieutenant-Governor, Gardiner, on his second point, nor with Mr. Lott in his third, nor with Mr. Putnam in his last two. We have no means of determining upon which of the other reasons it was reversed. We must presume that it was reversed for a reason which the court thought could or might be obviated on a further trial, or they would not have awarded a *venire de novo*."

So much for the case relied upon by counsel for appellant. Mr. Justice Willard's analysis of it shows how utterly worthless it is as an authority to guide this Court to a correct conclusion in the case in hand.

The point decided in *Adriance* v. *Rome* (52 Barb. 399), was that the superintendent of a manufacturing company, whose actual authority was "to have charge of the manufacturing department of the works, audit bills for materials and labor, and to appoint and discharge foremen and workmen," had no authority to make a loan of money in the name of the company, and execute a contract in its name, agreeing to sell and deliver to the lender a specified quantity of iron in consideration thereof. Gilbert, J., who rendered the opinion, had no doubt a corporation might be bound by the acts of a general agent, in the same manner as private individuals, and persons dealing in good faith with such agents are not presumed to know the private instructions which may have been given him by his principal. After declaring that that principle would not aid the plaintiffs, he proceeded to lay down the law as applicable to the very question raised in the case before him, which was as above stated. I find nothing in the case sustaining the appellants.

Where a cause is tried by the court without the intervention of a jury, there must be findings of fact sufficient to sustain the judgment. All the material issues should be passed upon. It is needless to cite authorities upon points so obviously clear and so thoroughly settled. In the case now under consideration, we think the court below did not proceed to render its judgment in disregard of these principles of law. The denial of indebtedness is the denial of a mere conclusion of law in this action. The company was

estopped to deny the authority of its secretary to draw the drafts. The third finding of the court covers the allegations in the answer that the order was issued without the authority or consent of the appellant, and out of its regular course of business. The allegation that these drafts were "without consideration to it" (the company) is not sufficiently pleaded and does not tender an issue. (19 Cal. 147; 19 Abb. Pr. 97; 2 Estee Pl. 757.)

All the other material issues are covered by the other findings.

Judgment affirmed.