Decided 20 June, 1904.

## MILLER v. HEAD CAMP.

[77 Pac. 83.]

FINDINGS AS SUPPORT FOR JUDGMENT—BILL OF EXCEPTIONS.

1. In the absence of a bill of exceptions the appellate court can consider only whether the findings support the judgment.

EFFECT OF ADMISSIONS IN PLEADINGS.

2. Admissions in the pleadings amount to findings of fact as to the matters admitted.

WAIVER OF TERMS OF INSURANCE POLICY—ESTOPPEL.

3. A waiver of a right necessarily involves on the part of the active power a knowledge of the right waived and of the facts relating to the matter: for instance, a premium or assessment on an insurance certificate having been remitted while the insured was suspended, and received at the head office after his death, the head officer, not being aware of his illness or death, cannot be said to have waived the suspension by keeping the assessment for a few weeks.

FACTS NOT CONSTITUTING A WAIVER.

4. Defendant benefit society declared assessments during October and November, 1898, payable during the month following such levy. Insured never paid such assessments, and became ill January 10, 1899, and died on January 18th. Two days prior to his death the clerk of the local lodge, without knowledge that insured was seriously ill, issued receipts for such assessments, dating them as of January 5th, and sent the sums due therefor to defendant, without insured having certified that he was in good health. Proof of death was submitted to defendant April 5th, but it did not return the money so received until July 21st. The certificate provided that it should not be in force at any time when the member should be suspended from the order, and that, if he should not pay any assessment within the time prescribed, his certificate would become void, and so continue until he was reinstated, though a suspended member might be reinstated by making application within three months, certifying good health. *Held*, that it was error to hold that there was a waiver of forfeiture, as a matter of law, as the defendant's general agent did not know of insured's illness and death.

From Harney : MORTON D. CLIFFORD, Judge.

This is an action by Sarah C. Miller against the Head Camp, Pacific Jurisdiction, Woodmen of the World—a corporation organized on the lodge plan, as a benefit society, under the laws of Colorado—to recover the sum of

$1,000 on a certificate of mutual life insurance issued by it to her son, F. T. Miller, and in which she is named as the beneficiary.   Miller died January 18, 1899, having been a member of Harney Valley Camp, No. 381, a subordinate lodge at Burns, Oregon ; and, the defendant refusing to pay any part of the sum specified in the certificate, this action was instituted, the complaint being in the usual form.   The defense is based on the ground that Miller died suspended from the order.   The reply having alleged that a forfeiture of his membership was waived by the defendant, a trial was had by the court, without the intervention of a jury, and findings of fact and conclusions of law were made, upon which judgment was entered for the plaintiff in the sum demanded, and the defendant appeals.

REVERSED.

For appellant there was a brief over the name of *C. M. Campbell,* and *Stillman, Leedy & Pierce,* with an oral argument by *Mr. A. D. Stillman.*

For respondent there was a brief over the name of *Biggs & Biggs,* with an oral argument by *Mr. Dalton Biggs.*

MR. CHIEF JUSTICE MOORE, after stating the facts in the foregoing terms, delivered the opinion of the court.

1. There being no bill of exceptions, the only question involved is whether the findings of fact support the judgment: *Noland* v. *Bull,* 24 Or. 479 (33 Pac. 983); *Allen* v. *Leavens,* 26 Or. 164 (37 Pac. 488, 26 L. R. A. 620, 46 Am. St. Rep. 613); *Richardson* v. *Dunlap,* 26 Or. 270 (38 Pac. 1).

The court found, in effect, that the defendant is a corporation, as alleged ; that it issued to F. T. Miller a certificate in which its by-laws were referred to as a part thereof; that in October and November, 1898, the defendant duly declared assessments on all its members on account of death losses, which were payable during the month next

45 OR.——13

following such levy; that these assessments were never paid by Miller, who became ill with la grippe January 10, 1899, which four days thereafter developed into polioencephalitis, followed by mental confusion, delirium, and coma, resulting in his death on the 18th of that month; that two days prior thereto one J. J. Tupker, who was then clerk of Harney Valley Camp, No. 381, issued receipts for such assessments, dating them as of the 5th of that month, and at the same time sent to the defendant the sums due therefor, which were received by it without Miller's having certified that he was in good health; that, though proof of Miller's death was submitted to the defendant April 5, 1899, it did not return the money so received until July 21st of that year; that Tupker was the duly authorized agent of the plaintiff and of the defendant; that he never made any misrepresentations to it; that the defendant accepted the payment of such assessments without any conditions or qualifications; that its officers had a right to waive, and, by the retention of the money paid by Tupker, did waive, a forfeiture, and treated Miller as in good standing at the time the remittance was made; and that Tupker did not then know of Miller's serious illness. Based on such findings the court concluded, as a matter of law, that the defendant waived a forfeiture of Miller's certificate; that Miller was a member in good standing in the defendant's order at the time of his death; and that plaintiff, as his beneficiary, was entitled to a judgment against the defendant for the sum of $1,000.

In addition to the findings made by the court, the pleadings admit that Miller's certificate provided that it should not be in force at any time when he should be suspended from the order; that, if he should not pay any assessment levied against him within the time prescribed, his certificate would become void, and so continue until

he should be duly reinstated; that a suspended member, within three months after his suspension, might be reinstated by making application therefor, certifying his bodily health to be good, and agreeing that, should his death occur within one year thereafter, as a result of any disease which he might then have, none of his beneficiaries should be entitled to receive any benefits on that account; that with such application he should pay the clerk of his camp all arrearages for assessments and camp dues; that, when the camp clerk sent remittance sheets to the head auditor on account of such payment, he should accompany the same with the reinstatement application, and, if he failed in this respect, such payments should be returned; that no attempted reinstatement by the clerk of a camp, without such reinstatement application, should be effective or entitle his beneficiaries to receive any benefit.

2. The facts admitted by the pleadings are tantamount to findings duly made: *Fink* v. *Canyon Road Co.* 5 Or. 301; *Luse* v. *Isthmus Transit Ry. Co.* 6 Or. 125 (25 Am. Rep. 506). But as they are only evidentiary, and do not necessarily support the judgment, they are stated merely to show the method prescribed for the reinstatement of a suspended member.

3. Do the findings of fact made by the court show that the defendant waived its right to insist upon a forfeiture of Miller's membership in the order in consequence of his nonpayment of assessments? A waiver is an intentional relinquishment of a known right, implying an election to forego some advantage which one might, at his option, have insisted upon, and, to be effective as an estoppel, there must be, first, a knowledge of an existence of the right; and, second, an intention to relinquish it: *Murray* v. *Heinze*, 17 Mont. 353 (42 Pac. 1057, 43 Pac. 714); *Supreme Lodge* v. *Quinn*, 78 Miss. 525 (29 South. 826). Mr. Justice BEAN, in *Whigham* v. *Independent Foresters*, 44 Or.

543 (75 Pac. 1067), in discussing this subject, says : "In the nature of things, there can be no waiver or estoppel without knowledge of the facts upon which it is based. The waiver of a right presupposes a knowledge of the right waived, and, therefore, before defendant can be held to be estopped or to have waived any of its rights by reason of the conduct of a subordinate lodge or its officers, it must be shown that it or they had knowledge of the facts."

In the case at bar the court found that the money sent by Tupker was received by the defendant six days after Miller's death. The defendant's general agent must have known that Miller was in default at that time, but evidently did not know of his death, which fixed and determined the rights and obligations of the parties to this action.: *Stringham* v. *Mutual Ins. Co.* 44 Or. 447 (75 Pac. 822). And as this agent was ignorant of Miller's illness, a waiver of forfeiture cannot be inferred from the acceptance and retention of the money in the absence of such knowledge. If the court had found the ultimate fact that the defendant's officers waived a forfeiture and continued to treat Miller as in good standing January 16, 1899, the decision upon the question of fact would probably have been sufficient; but the finding made is equivalent to a conclusion of law, based as it is upon the receipt and retention of the money, and, without further finding that the defendant's officers knew of Miller's ill health, is insufficient.

4. Though the clauses of the constitution and by-laws admitted by the pleadings seem to negative the right of a subordinate camp clerk to waive a forfeiture, the finding of the court that Tupker was the agent of the defendant cannot, in the absence of a bill of exceptions, be controverted, and it must therefore be assumed that evidence was introduced in support thereof. It will be remembered

that the court found that on January 16, 1899, when Tup-ker remitted the assessments to the defendant, he did not know of Miller's "serious" illness. This implies that he knew Miller's health was impaired, but did not know his life was endangered. If the court had found that Tupker, as defendant's agent, waived a forfeiture, such finding, in the condition of the transcript before us, would probably have been sufficient; but the waiver upon which the court's conclusion of law seems to be based consists of the acts of the defendant's officers, and does not, in our opinion, refer to Tupker as its agent. These officers had no knowledge of Miller's illness, and, as there is no finding that Tupker waived a forfeiture, his implied knowledge of Miller's impaired health at the time he paid the assessments for him is not a sufficient finding to uphold the judgment, which is reversed, and a new trial ordered.

REVERSED.

---

Decided 27 June, rehearing denied 3 October, 1904.