O'NEILL v. TITLE GUARANTY & TRUST CO.

(Circuit Court of Appeals, Sixth Circuit. November 7, 1911.,

No. 2,126.

PRINCIPAL AND SURETY (§ 117*)—SURETY FOR BUILDING CONTRACTOR—DIS-
CHARGE—FAILURE OF OWNER TO RETAIN AGREED PERCENTAGE OF PRICE.

Under a building contract providing for monthly payments of 90 per
cent. of the value of the labor and material in place, and that the owner
shall retain the remainder of the price until completion and acceptance
of the building, the measure of value on which the partial payments are
to be estimated is the contract price for the completed building, and a
surety for the contractor, entitled by the terms of his bond in case of
default by the contractor to the benefit of all retained percentages, is dis-
charged if the owner has failed to retain at least 10 per cent. of the
contract price.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§
283–285; Dec. Dig. § 117.*

Discharge of surety on building contract by change in obligation or duty
of principal, see note to United States v. Walsh, 52 C. C. A. 427.]

In Error to the Circuit Court of the United States for the East-
ern District of Michigan.

Action by John G. O'Neill against the Title Guaranty & Trust
Company. Judgment for defendant, and plaintiff brings error. Af-
firmed.

John C. Donnelly (Brennan, Donnelly & Van De Mark and Phil-
lips & Jenks, on the brief), for plaintiff in error.

Luman W. Goodenough, for defendant in error.

Before WARRINGTON and KNAPPEN, Circuit Judges, and
HOLLISTER, District Judge.

WARRINGTON, Circuit Judge. The controversy in this cause
arises upon a surety-bond. It was given to secure the owner, O'Neill,
against loss through failure of his contractor, Herman, to perform
a contract, according to drawings and specifications, for the construc-
tion of a theater and commercial building in Port Huron, Mich. Suit
was brought by O'Neill against the guaranty company and Herman,
but later Herman, under voluntary proceedings in bankruptcy, was
discharged, and on motion of plaintiff the suit was discontinued as
to him and an order made that he proceed against the defendant
guaranty company alone. An instructed verdict was rendered for the
company in the court below, and upon the overruling of a motion for
a new trial the cause was brought here upon proceedings in error.

One of the defenses urged is that O'Neill violated the contract
by failing to retain from Herman 10 per cent. of the total contract
price for the building, and through the overpayment so involved
discharged the surety. If this defense is sound, it will not be nec-
essary to consider any other question presented.

The building contract required Herman "to provide all manner of
materials and labor, scaffolding, implements, molds, models and

cartage of every description for the performance of the several works," except only wiring, plumbing, heating, and certain sewers to be furnished and placed in position by O'Neill, for the sum of $25,500. It was further provided:

"* * * Payments to be made on the first day of each month in the following manner. Ninety per cent. of the amount of labor and material in place in said building, and fifty per cent. of the amount of material on the ground, the final payment to be made when the building is fully completed to the satisfaction of the architect. * * *"

The bond in dispute was given by Herman as principal and the guaranty company as surety in favor of O'Neill in the penal sum of $10,000, and its conditions required the surety to indemnify the owner and hold him harmless from pecuniary loss resulting from the contractor's breach of any of the provisions of the building contract, and limited the surety's liability to a sum not greater than the penalty of the bond. Another condition of the bond was that, in case of default of the contractor, the surety should have the right to complete the contract and be subrogated to the rights of the contractor as to "all deferred payments, retained percentages," etc. The contractor failed to complete the building and pay the claims of some materialmen.

Payments were made on formal estimates in some instances and informal estimates in others. The total amount paid by O'Neill to Herman between November 1, 1905, and May 15, 1906, was either $24,393.05 or $24,512.30. The payments were thus in excess of 90 per cent. of the contract price stated, no matter which sum is regarded. Does this discharge the surety?

On March 28, 1906, plaintiff gave notice by letter to defendant that the building was nearing completion and that he expected to make final payment within two weeks. At that time he had paid all of the sum first above stated except $79.89. In the same notice he also stated that there were certain outstanding claims for materials furnished for the building, amounting to something like $4,000. A stipulation was filed in the cause later by which it was agreed that the amount of recovery to which plaintiff should be entitled, if he could recover at all, was $6,500 with a possible reduction of $440. It is apparent that the building was, through causes not distinctly shown, suffered to cost nearly $5,000 in excess of the contract price. This fact accentuates alike the importance of the retained percentage clause and the injurious effects of its nonobservance by the owner.

The interpretation contended for on behalf of plaintiff respecting payments is that 90 per cent. of the estimated value of the material and labor in the building and 50 per cent. of the value of the material on the ground could rightfully be paid, however much the sum of such values might exceed the price named in the contract.

Judge Denison, who presided at the trial below, held:

"The contract and the bond must be construed together. The ordinary, normal situation must have been in the minds of the parties, viz., that the contract price would cover the labor and material and some margin of profit to the contractor. It is provided that not more than 90 per cent. of the cost of the labor and material shall be paid immediately, and that the final pay-

ment shall be held back, in part for the benefit of the surety, and shall not be paid until the surety has had notice, etc. I think the parties contemplate, in such a contract, that at least 10 per cent. of the contract price shall be found remaining in the final payment to be made; and that, when the owner has paid, on estimates, 90 per cent. of the contract price, he should at least prima facie treat the remainder as the final payment."

It will be observed that the main difference between the interpretation thus placed by the learned judge upon the contract and that insisted upon by plaintiff is that the court looked to the building contract and the price specified in it for the limitation as to total cost, while plaintiff in effect strikes that price out altogether and resorts to the value of the material and labor instead. The maxim, "Ut res magis valeat quam pereat," ought alone to be a sufficient answer to this insistence of plaintiff; but, in view of his utter disregard of the covenant as to retained percentage in case of default of the contractor, the further answer remains that the owner is in no position as against the surety to claim that the total value of materials and labor shall be substituted for the contract price.

The decisions relied on by plaintiff in support of his interpretation of the contract are not convincing. While the provision of the contract involved in Howard County v. Baker, 119 Mo. 397, 24 S. W. 200, was similar to that of the present contract, yet the total of the sums paid and paid too upon estimates of the architect was less than the percentage authorized to be paid, even when considered with reference to the price specified in the contract. The case does not decide that payments aggregating more than such percentage would not, if made, release the surety; much less that payments made without estimates contributing to an excess above such percentage would not violate the contract.

In National Surety Co. v. Long, 85 Ark. 158, 107 S. W. 384, the contract provided for payment as the work progressed, "75 per cent. of the value of the work done and materials furnished," etc. It was held by a divided court that the parties contemplated a distinction between the value of the materials and the contract price, and so refused to treat the latter as the basis upon which to make estimates and payments. The exact reverse of this was previously decided in the same case by a majority of the same court. National Surety Co. v. Long, 79 Ark. 523, 96 S. W. 745.

And in Hawkins v. Burrell, 69 App. Div. 462, 464, 74 N. Y. Supp. 1003, 1004, it was held under a contract containing language similar to that found here:

"The contract price fixes the value of the completed work, and 80 per cent. of the 'value of work done' as the work proceeds relates to the value of such partial work as measured by the value of the completed work."

We therefore hold that the basis upon which current payments should have been made was the price ($25,500) specified in the contract; and that this price was the only measure of value with respect to which estimates could be considered either for materials and labor incorporated into the building as the work progressed or for materials placed upon the building premises. Ninety per cent. then of the contract price was the maximum sum which the owner could under

the bond rightfully pay to the contractor prior to the completion of the building; and hence the remaining 10 per cent. of the contract price was the amount intended to be reserved as "retained percentage," and the guaranty company was entitled to this upon default of the contractor. We have seen that estimates in the ordinary acceptation of the term were not made throughout (Fidelity & Deposit Co. v. Agnew, 152 Fed. 955, 82 C. C. A. 103 [C. C. A. 3d Cir.]), and that the percentage designed to be retained was not withheld from the contractor.

The object of reserving such percentages is manifestly to furnish an incentive to the contractor to finish the work, and to secure both the owner and guarantor; and it has been so often held that a failure on the part of the owner to retain the percentage will release the surety, that little more than a citation of some of the decisions is necessary.

In Prairie State Bank v. United States, 164 U. S. 227, 233, 17 Sup. Ct. 142, 145 (41 L. Ed. 412), the present learned Chief Justice said:

"That a stipulation in a building contract for the retention, until the completion of the work, of a certain portion of the consideration, is as much for the indemnity of him who may be guarantor of the performance of the work as for him for whom the work is to be performed; that it raises an equity in the surety in the fund to be created; and that a disregard of such stipulation by the voluntary act of the creditor (owner) operates to release the sureties—is amply sustained by authority."

The justice then proceeded with a review of authorities. See, also, Fidelity & Deposit Co. v. Agnew, supra, 152 Fed. 955, 82 C. C. A. 103; Backus v. Archer, 109 Mich. 666, 67 N. W. 913; Simonson v. Grant, 36 Minn. 439, 31 N. W. 861. An instructive illustration of the rule that an owner shall observe and perform covenants looking to the protection of a surety company may be found in the opinion of Sanborn, Circuit Judge, in National Surety Co. v. Long, 125 Fed. 887, 60 C. C. A. 623 (C. C. A. 8th Cir.).

The judgment below must be affirmed.