Argued July 20, reversed September 19, 1916.

## NEILSON *v*. TITLE GUARANTY & SURETY CO.

(159 Pac. 1151.)

**Appeal and Error—Record—Review.**

1. On an appeal presented upon a record embracing only the pleadings and the findings of the trial court, the only question involved is whether the judgment appealed from is supported by the facts ascertained by the court and the admissions found in the pleadings.

**Principal and Surety—Liability of Surety Company—Construction.**

2. The rule of *strictissimi juris*, usually available to sureties without compensation, is generally relaxed when applied to a paid surety, so that a bonding company must show that its rights have been injuriously affected before it can defeat its contract.

[As to liability of surety company as distinguished from that of individual surety, see note in Ann. Cas. 1912B, 1037.]

**Principal and Surety—Clearing Contract—Discharge of Surety—Unauthorized Payments to Principal.**

3. Under a contract to clear and plow a tract at a certain price per acre, aggregating a certain amount for the entire work, and stipulating that on or before the fifth day of each month the owner or his agent should pay to the contractor the amount then due for work completed upon an estimate made by the owner or his agent, secured by a surety bond, providing that on default of the principal the surety might complete the contract, and should be subrogated to the rights and properties of the principal, including deferred payments and credits due the principal at default, or to become due thereafter, the owner's payment of nearly one half of the contract price on demands of the contractor, and without any information on which to make a real estimate, made before the contract was abandoned and when no part of the work was entirely completed and when not an eighth part of it was done, was such a payment as to relieve the surety.

From Multnomah: GEORGE N. DAVIS, Judge.

Department 2.   Statement by MR. JUSTICE HARRIS.

The plaintiff, William Neilson, owned 12 lots in a tract of land known as "Buena Vista Orchards" in Wasco County, Oregon.   On July 20, 1911, C. Masters contracted to clear and plow all the lots, and was to receive $5,700, "or $71.25 per acre," for certain designated lots, and $400 for the work to be done on the remaining lots, aggregating $6,100 for the entire work which the parties agreed "shall be completed not later than February 1, 1912."   It was also stipulated that:

"On or before the fifth day of each month the said Wiliam Neilson, or his duly appointed agent, shall pay to the contractor the amount then due for work completed; the estimate shall be made by said William Neilson or his duly appointed agent."

In order to indemnify Neilson for any loss which he might sustain on account of any breach of the contract by Masters, the latter as principal, and the Title Guaranty & Surety Company, a corporation engaged in the bonding business, as surety, gave to Neilson a bond in the penal sum of $6,100.   It is provided in the bond that in case of default on the part of the principal, the surety shall have the right to complete the contract and "shall be subrogated and entitled to all the rights and properties of the principal arising out of the said contract and otherwise, including all securities and indemnities therefor received by the obligee, and all deferred payments, retained percentages and credits, due to the principal at the time of such default, or to become due thereafter by the terms and dates of the contract."

Alleging that Masters violated the contract in various particulars, and that "during the month of February, and after the term had lapsed within which

said contract was to be performed, said defendant C. Masters further breached and broke said contract by abandoning'' the work, leaving certain of the lots only partially cleared, the plaintiff commenced this action on the bond against the principal and surety.

Masters did not appear, but the surety answered and alleged that it had been discharged from any liability because Neilson had paid Masters sums of money at various times without making any estimate, and without regard to the amount of work completed, and that approximately one half of the contract price had been paid, although no part of the work was ever completed. The parties consenting, the cause was tried by the court without a jury. After hearing the evidence the trial judge made findings of fact, upon which Neilson was awarded a judgment against the surety for $6,100, and the latter appealed.

REVERSED.

For appellant there was a brief over the names of *Messrs. Latourette & Latourette* and *Messrs. Emmons & Emmons,* with an oral argument by *Mr. J. R. Latourette.*

For respondent there was a brief over the names of *Mr. Hugh Montgomery, Mr. Robert J. Upton* and *Messrs. Platt & Platt,* with an oral argument by *Mr. Montgomery.*

MR. JUSTICE HARRIS delivered the opinion of the court.

In addition to what has already been stated a recital must be made of some of the facts found by the trial court, for the reason that the surety contends that it is entitled to a judgment on those facts. Neilson paid $100 to Masters on September 5, 1911, $400

on October 3d, and $500 on November 1st, upon esti-
mates of the work completed as provided in the
contract. On November 18, 1911, however, Neilson
departed for Boston and New York City, where he
remained continuously until the following March, and
while there he sent $500 to Masters on December 5th,
$200 on December 11th and $1,200 on January 2d. In
the language of the trial court all the "payments made
during Neilson's absence were based upon estimates
made by Neilson himself, and that said estimates so
made by him were based solely upon his knowledge
of the conditions of the work obtained before his de-
parture for the east, together with information con-
tained in the above letters from King and Masters,
which said letters contained all and the only infor-
mation Neilson received of the work completed during
his said absence," and the surety "did not consent
to any payment other than as the contract provided."

The letters referred to in the quoted finding em-
brace several communications from Masters and one
letter from King, who "was Neilson's sole agent about
said work." Under date of November 23, 1911, Mas-
ters wrote to Neilson for $700, saying that the neces-
sary expenses will "keep me going somé to make that
cover it," and upon receipt of this letter Neilson sent
a payment of $500 to Masters. On December 5th,
Masters wired to Neilson that he needed $200 more to
meet bills coming due, and Neilson then sent $200. On
December 24th, Masters wrote to Neilson, giving a
statement of his expenses for the month of Decem-
ber, and also stated that he would need $1,700, and on
January 2, 1912, upon receipt of this letter, Neilson
sent two drafts to King, one for $1,200 and the other
for $500, with instructions to deliver the $1,200 draft
to Masters, "and if the work is half done," to deliver

the $500 draft. The letter with which the drafts were inclosed concluded with a direction to King to "send me at once a detailed statement of the present condition of the clearing and your own estimate of the time necessary to complete it." King "determined that one half of the work had not been completed," and returned the $500 draft to Neilson. The single letter received from King was dated December 4, 1911, and did not contain any information which would enable Neilson to estimate the work completed. Masters breached the contract in various particulars, and finally abandoned the work, and "not one-eighth part of the work was ever done by him."

1-3. The appeal is presented upon a record which embraces only the pleadings and findings made by the trial court, and consequently the only question involved is whether the judgment appealed from is supported by the facts ascertained by the Circuit Court and the admissions found in the pleadings: *Miller* v. *Head Camp,* 45 Or. 192 (77 Pac. 83) ; *Humphry* v. *Portland,* 79 Or. 430 (154 Pac. 897). The surety argues that it is discharged from liability because Neilson made payments to Masters without making estimates and without regard to the work completed. It will be recalled that Neilson agreed to pay to Masters on or before the fifth day of each month "the amount then due for work completed," and it was further stipulated that "the estimate shall be made by said William Neilson or his duly appointed agent." The September, October and November payments, aggregating $1,000, were based upon estimates which were duly made by Neilson. On November 18th, Neilson went to New York and Boston, and while there made the remaining payments, aggregating $1,900. He had no personal knowledge of the conditions exist-

ing after November 18th, and was without information concerning the progress of the work, except as revealed by the communications from Masters. The telegram and letters from the contractor were urgent appeals for money to meet expenses rather than statements of work done or estimates of work completed, and the remittances made by Neilson were based upon the indebtedness incurred by Masters rather than upon the work completed by him. The letter written by Neilson on January 2d, plainly shows that he was without knowledge of the conditions then existing, and could not make an estimate of the work completed; and yet, in spite of his lack of information concerning the work completed, he instructed King to deliver to Masters the $1,200 draft, with the result that when Masters abandoned the contract in the following February, Neilson had paid to him nearly one half of the entire contract price, notwithstanding "no part of the work was ever entirely completed," and "not one-eighth part of the work was ever done."

The rule of *strictissimi juris,* which is usually available to those who become sureties without compensation, is generally relaxed when applied to a paid surety, and in this, as well as in most jurisdictions, a hired bonding company must show that its rights have been injuriously affected before it can defeat its contract of suretyship: *Bross* v. *McNicholas,* 66 Or. 42, 48 (133 Pac. 782, Ann. Cas. 1915B, 1272); *Atlantic Trust & Deposit Co.* v. *Town of Laurinburg,* 163 Fed. 690 (90 C. C. A. 274). The contract between Neilson and Masters contemplated an approximate judgment of the work completed, and the agreement was not observed when the owner made payments based on the expenses incurred by the contractor and without regard to the work completed: *Fidelity & Deposit Co.* v. *Agnew,* 152 Fed. 955 (82 C. C. A. 103); *O'Neill* v. *Title*

*Guaranty & Trust Co.,* 191 Fed. 570 (113 C. C. A. 211); *Board of Commrs.* v. *Branham* (C. C.), 57 Fed. 179. Payment of substantially one half of the entire contract price, when less than one eighth of the work had been done, is such an excessive overpayment "that it may be accepted as self-evident that the alteration by the plaintiff proved prejudicial to the surety": *Justice* v. *Empire State Surety Co.,* 218 Fed. 802, 804 (134 C. C. A. 490, 492). The contract undertaken by Masters was either a losing or a profitable venture, but in either event the excessive overpayment reduced the amount to be paid for work yet to be done, and to the extent of such excess impaired the security which was available to the surety when Masters abandoned the contract. By his own conduct Neilson not only weakened one of the incentives for Masters to complete his contract, but he also materially lessened the security to which the bonding company was entitled, and therefore by his own conduct the plaintiff has injuriously affected the rights of the bonding company, so that the latter is now released from liability: *Calvert* v. *London Dock Co.,* 2 Keen, 638; *Prairie State Bank* v. *United States,* 164 U. S. 227 (41 L. Ed. 412, 17 Sup. Ct. Rep. 142); *Black Masonry etc. Co.* v. *National Surety Co.,* 61 Wash. 471 (112 Pac. 517); *Justice* v. *Empire State Surety Co.* (D. C.), 209 Fed. 105; Id., 218 Fed. 802 (134 C. C. A. 490); *O'Neill* v. *Title Guaranty & Trust Co.,* 191 Fed. 570 (13 C. C. A. 211); *Fidelity & Deposit Co.* v. *Agnew,* 152 Fed. 955 (82 C. C. A. 103); *Wells* v. *National Surety Co.,* 222 Fed. 8 (137 C. C. A. 546). The judgment appealed from is reversed, and the surety is granted a judgment for its costs and disbursements.    REVERSED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE BEAN and MR. JUSTICE BENSON concur.