On 12 July, 1924, R. L. Blaylock, contractor, entered into a written agreement with the board of education of Lenoir County for the erection of a public school building at Moss Hill, N.C. in which it was stipulated, among other things, that, in consideration of the sum of $26,316.00, payable up to 85% of the contract price in monthly installments on estimates of the architect, with 15% to be retained and held until the completion of the building, "the contractor shall and will provide all materials and perform all the work" necessary for the erection of said school building; and on the same day, for a valuable consideration, the board of education of Lenoir County took from the contractor, as principal, and the American Surety Company, as surety, a bond of indemnity in the sum of $4,579.00 to "indemnify the obligee against any loss or damage directly arising by reason of the failure of the principal faithfully to perform said contract," etc.
On 18 February, 1925, the contractor defaulted, having received prior to that time $22,244.84 of the contract price for work on said building. Thereafter the board of education, on order of the bonding company, expended $277.41 for the completion of the building, leaving a balance of $3,716.06 due under the contract, and held by the school board as the 15% retained percentage.
At the time of default by the contractor, claims for work done on and materials furnished for said building, amounting to $8,284.96, were outstanding and unpaid.
On 28 April, 1926, the surety paid into court the sum of $4,579.00, the full penalty of its bond (unless it be liable for interest thereon), for distribution pro rata among the laborers and materialmen as provided by the statute.
The American Surety Company now contends that the retained percentage, amounting to $3,716.06, in the hands of the board of education of Lenior County, should be turned over to it by reason of its contract of suretyship which contains, inter alia, a stipulation to the effect that in case of default by the contractor, the surety "shall also be subrogated to all of the rights of the principal; and any and all moneys or property that may at the time of such default be due, or that thereafter may become due to the principal under said contract, shall be credited upon any claim which the obligee may then or thereafter have against the surety, and the surplus, if any, applied as the surety may direct."
The plaintiffs, on the other hand, contend that said amount should be applied to the payment of their claims, being, as they are, laborers and materialmen. The appeal presents the single question as to who is entitled to this fund. The trial court held that it should be paid to the *Page 410 
American Surety Company. We think the judgment is correct, and that it must be affirmed.
It is conceded by all the parties that the bond executed by R. L. Blaylock and the American Surety Company was taken and given in view of the provisions of C. S., 2445, as amended by chapter 100, Public Laws 1923, requiring every county, city, town or other municipal corporation, which lets a contract for building, repairing or altering any building, public road or street, to take from the contractor of such work (when the contract price exceeds $500) a bond, with one or more solvent sureties, before beginning any work under the contract, payable to said county, city, town or other municipal corporation, and conditioned "for the payment of all labor done on and materials and supplies furnished for the said work," and upon which suit may be brought for the benefit of laborers and materialmen having claims. Warner v. Halyburton, 187 N.C. 414.
The statute, as amended, provides that every bond given to any county, city, town or other municipal corporation, for the building, repairing or altering of any public building, public road or street, as required by this section, "shall be conclusively presumed to have been given in accordance therewith, whether such bond be so drawn as to conform to the statute or not, and this statute shall be conclusively presumed to have been written into every such bond so given." The amount of the bond is to be equal to the contract price when over five hundred and not more than two thousand dollars; when the contract price is between two and ten thousand dollars, the amount is to be determined by adding to two thousand dollars, thirty-five per cent of the excess of the contract price over two thousand dollars; and when the contract price is over ten thousand dollars, the amount of the bond is required to be two thousand dollars plus twenty-five per cent of the excess of the contract price over the sum of two thousand dollars. It is further provided in the amended law that only one action may be brought on such bond, all claimants to be duly notified, which was done in the instant case, and if the aggregate sum exceed the amount of the bond, the payments are to be prorated. "If the recovery on the bond shall be inadequate to pay the amounts found due to all the claimants, judgment shall be given to each claimant pro rata of the amount of the recovery."
The surety is also allowed, by paying into court in such suit the full amount of the penalty of the bond, to be relieved from any other or further liability thereon. Electric Co. v. Deposit Co., 191 N.C. 653.
The principle is well established by many authoritative decisions, here and elsewhere, that in determining the surety's liability to third persons, on a bond given for their benefit and to secure the faithful *Page 411 
performance of a building contract as it relates to them, the contract and bond are to be construed together. Mfg. Co. v. Andrews, 165 N.C. 285. The obligation of the bond is to be read in the light of the contract it is given to secure, and ordinarily the extent of the engagement, entered into by the surety, is to be measured by the terms of the principal's agreement.Brick Co. v. Gentry, 191 N.C. 636, and cases there cited.
It is stipulated in the present bond that "this bond is subject to the provisions of section 2445 of the Revised Statutes of North Carolina and amendments thereto." The right of the laborers and materialmen to recover on said bond is conceded, and it has been paid in full. The contest is over the retained percentages withheld under the contract and now in the hands of the owner.
In this connection, it may be well to bear in mind the distinction between the remedies afforded and intended to be afforded by the present statute, being applicable, as it is, to public works, and those given by the lien statutes which apply only to private works of a similar nature.Noland Co. v. Trustees, 190 N.C. 250.
C. S., 2437, one of the lien statutes, in terms provides that all subcontractors and laborers who are employed to furnish, or who do furnish, labor or material for the building, repairing or altering of any house or other improvement on real estate, shall have a lien on said house and real estate for the amount of such labor done or material furnished, when notice thereof has been given as required by law; "but the sum total of all the liens due subcontractors and materialmen shall not exceed the amount due the original contractor at the time of notice given." Supply Co. v. EasternStar Home, 163 N.C. 513.
The policy of the lien law is to protect subcontractors and laborers against loss for labor done and materials furnished in building, repairing or altering any house or other improvement on real estate, to the extent of the balance due the original contractor at the time of notice to the owner of claims therefor, but it is not provided that the owner shall be liable in excess of the contract price, unless he continue to pay after notice of claim from the subcontractor or laborer, and then only to the extent of such payments after notice. "After such notice is given, no payment to the contractor shall be a credit on or discharge of the lien herein provided." C. S., 2438.
Where the original contractor has been paid in advance, or the owner has settled with him in full prior to notice of any claim from a laborer or materialman for work done or material furnished and not paid for, there is no provision in any of the lien statutes whereby a subcontractor or laborer may acquire a lien against the property, or sue the owner for the value of such claim. Rose v. Davis, 188 N.C. 355. Liens are *Page 412 
given to subcontractors and those who furnish labor, materials and supplies, to the end that they may force collection from their debtor, the original contractor, and not for the purpose of rendering the owner primarily liable for such claims, except where proper notice has been given before settlement with the contractor. Mfg. Co. v. Andrews, supra.
But in the statute now under consideration, C. S., 2445, passed as a partial substitute for the lien statutes in an effort to place public construction somewhat on a parity with private work of a similar kind, and by virtue of which it is conceded the present bond was taken and given to insure the faithful performance of the building contract on the part of R. L. Blaylock, there is no provision whereby the owner may withhold funds belonging to the contractor upon notice from a laborer or materialman that the work done or material furnished by him to the contractor has not been paid for; nor would the owner be justified in withholding funds due the contractor upon receipt of such notice. The contract of the laborer or materialman is with the contractor, and in the absence of agreement or statutory provision allowing it, the owner would not be relieved, even protanto, of its obligation to the contractor by paying one or more of those who work for or furnish materials to the contractor. An obiter suggestion to the contrary, made in Scheflow v. Pierce, 176 N.C. p. 93, was disapproved in Noland Co. v. Trustees, 190 N.C. p. 253.
In Hutchinson v. Comrs., 172 N.C. 844, the board of commissioners of Iredell County, upon notice duly received, paid to a subcontractor (Lon G. Crouse Company) its claim for painting a county home out of funds retained and due the original contractor at the time notice was received. In a suit by the receiver of the original contractor against the board of commissioners to recover the balance due under the building contract, it was held that, as the subcontractor acquired no lien on a public building, and the notice given by it imposed no obligation on the commissioners with reference to the amount due the original contractor, such payment was made by the defendant, board of commissioners, on its own motion, when under no duty to do so, and that the amount so paid could not be allowed as a credit against the balance due the original contractor.
The lien statutes, therefore, may be put aside as inapplicable, as no lien can be acquired on a public building. Noland Co. v. Trustees, supra;Snow v. Comrs., 112 N.C. 336. And where the property is not subject to a lien, as here, no duty or obligation is imposed upon the owner or principal contractor by virtue of any notice or attempt to acquire a lien thereon.Foundry Co. v. Aluminum Co., 172 N.C. p. 707; Hall v. Jones, 151 N.C. 419. *Page 413 
The equitable lien theory with respect to claims of laborers and materialmen has not been recognized in this jurisdiction. They are protected by statutory liens and bonds. Animadverting on the subject in Inre Fowble, 213 Fed., 676, District Judge Rose said:
"Most men feel that one who has contributed to the creation of anything of value stands in a peculiar relation to it. He has a special claim to be paid out of it. The mechanic and other lien laws of so many jurisdictions are the expression of that conviction. The courts, however, have not seen their way clear to make it a generally applicable principle of equitable jurisprudence. It has had its part in shaping many a rule administered in chancery, but complete recognition has been withheld from it. The difficulty, in many, if not in most cases the impossibility, of accurately and justly defining its limits have amply justified the hesitation of the courts. If mechanic's lien laws prove the strength of its appeal to an instinctive sense of natural justice, they demonstrate that it is usually impossible to apply it beyond the limits to which the statutes go."
The right of the plaintiffs, laborers and materialmen, to insist on having the retained percentages, now in the hands of the owner, applied to the payment of their claims must rest upon contract rather than upon any statutory lien; just as the American Surety Company claims said fund by right of contract.
It is settled by the decisions that, as no lien can be secured or enforced against a public building, the laborers and materialmen have no claim on the funds retained in the hands of the owner, either by statutory or equitable lien. Henningsen v. U.S. Fidelity Co., 208 U.S. 404; TrustCo. v. Construction Co., 191 N.C. 664. The surety, therefore, upon the payment of the claims of the laborers and materialmen, it would seem, could take no lien on said funds by way of subrogation or substitution. PrattLumber Co. v. Gill Co., 278 Fed., 783. This is well illustrated by the case of American Surety Co. v. Finletter, 274 Fed., 152, where the question is ably discussed from a number of viewpoints, with the following as one of the conclusions announced: "In this state of the law — laborers and materialmen having no rights to reserved percentages — there were, as to them, no rights to which the Surety Company could be subrogated. Likewise, Peoples Brothers, Inc. (contractor), had no rights in the fund to which the Surety Company could be subrogated. Obviously, there was no right of subrogation anywhere."
Especially is this so where the claims have not been paid in full. Subrogation is a creature of equity and is never allowed, as against a creditor, until the whole debt is paid. A pro tanto substitution or subrogation is not permitted. Maryland Casualty Co. v. Fouts, 11 Fed. *Page 414 
(2nd series), 71. "Unless the surety pays the debt in full, he is not entitled to subrogation" — Thompson, District Judge, in Peoples v.Peoples Bros., 254 Fed., 489.
Suppose no bond had been given at all, Would the plaintiffs, in that case, be entitled to have the retained percentages applied to the payment of their claims? We think not. The contractor alone would be entitled to receive them. Hutchinson v. Comrs., supra. And what would be the status of the bond if the owner had not retained the 15% as provided by the contract? The surety would be discharged, pro tanto at least, certainly so far as the rights of the owner are concerned. Prairie State Nat. Bank v. UnitedStates, 164 U.S. 227; Finney v. Condon, 86 Ill. 78; Brandt on Suretyship (3 ed.), sec. 439. Speaking to the question in St. Peter's Catholic Churchv. Vannote, 66 N.J. Eq., 78, Vice-Chancellor Reed said: "Now, the twenty per cent was retained as indemnity against failure by the contractors to entirely execute the contract. As against the sureties, the owner was bound to so retain it (the contract so providing), else he would have pro tanto
discharged the sureties from their obligations to answer the default of the contractors."
Here, retention by the owner of 15% of the contract price until the completion of the building is expressly made a condition precedent to any right to recover on said bond. Ins. Co. v. Durham County, 190 N.C. 58.
It should be remembered that the plaintiffs have received, or will receive, their pro rata part of the full penalty of the bond which was given for their protection, and the retention of 15% of the contract price is one of the terms upon which the bond was given. Neilson v. TitleGuaranty S. Co., 81 Or. 422, 159 P. 1151. This was part of the consideration moving to the bonding company. It is now seeking to recover on its contract.
While the surety may have no claim to the reserved percentages by way of subrogation or equitable lien, the rationale of our decisions is to the effect that, under conditions like the present, the surety has a contractual right, measured by the terms of the contract and bond, to have such reserved percentages applied to the exoneration of the loss sustained by the contractor's failure to pay the claims of laborers and materialmen. Speaking to the question in Gastonia v. Engineering Co., 131 N.C. 359,Clark, J., said: "Besides, the American Surety Company, having become surety to the engineering company for the faithful performance of said contract, upon any default of its principal by which it became liable on said bond, if it did not become subrogated to the rights of its principal in this fund, it is at least entitled to have it applied to the payment of these claims for materials, in exoneration of its liability therefor.Patton v. Carr, 117 N.C. 176." *Page 415 
In Wells v. City of Philadelphia, 270 Pa., 42, 112 A. 867, the same position is expressed as follows: "It was not a new engagement, but a continuation of the old one, wherein the surety succeeded to all the rights of the contractor under the contract, as well as liabilities to the owner thereunder. As to any money retained, the surety then stands to that fund in the same position as the owner of the property to which the contract relates. The surety's relation, through compulsion (default), dates even with the owner's relation. From this fund and the unpaid contract price it is entitled to sufficient to save itself from loss on its suretyship engagement; nor can the contractor, by assignment or otherwise, deprive it of this right."
The authorities sustain the right of the surety to have the retained percentages, provided for in the contract, applied to the exoneration of loss occasioned by default of the contractor. As said by District JudgeConnor in Pratt Lumber Co. v. T. H. Gill Co., 278 Fed., 783, after an exhaustive investigation of the subject: "It would seem that the better view is that expressed in several of the best-considered cases — that the surety acquires a contractual right, measured by the terms of the contract, between the owner of the property and the contractor, which entitles him to the benefit of such provisions as inure to the protection of the owner, subject of course to his primary right, and reduces the liability of the surety against loss or damage by the default of the contractor. The language quoted by Judge White in the Prairie State Bankcase from a number of English and American courts tends strongly to sustain this principle upon which the right of the surety rests."
The case is an unusual one in that the work was practically finished at the time of default by the contractor, and only a small amount of the retained percentages in the hands of the owner at that time was required for the completion of the building. It is clear, we think, that the balance of the retained percentages in the hands of the owner must be paid to the American Surety Company. This reserved fund is as much for the indemnity of the surety as it is for the security of the owner, and upon the payment of the bond the surety is entitled to the sum still remaining of the fund retained for its benefit. Prairie State Nat. Bank v. United States,164 U.S. 227; Wasco County v. Ins. Co., 74 L.R.A. (N.S.), 732, and note. See, also, Hall v. Terra Cotta Co., 97 Kan. 103, as reported in Ann. Cas., 1918D, with valuable note covering the whole subject.
The apparent hardship of the case arises from the fact that the bond given by the contractor and taken by the board of education for the benefit of the laborers and materialmen is not large enough, or it is *Page 416 
not as large as contemplated by the statute, but this is a deficiency which the courts are not able to supply. Nolan Co. v. Trustees, supra.
His Honor correctly held that the liability of the American Surety Company on its bond would not exceed the maximum penal sum of $4,579.00, which has been paid into court. S. v. Martin, 188 N.C. 119.
According to the modern weight of authority in other jurisdictions, the general rule seems to be that although the penalty of the bond fixes the limit of liability of the surety at the time liability arises thereunder, yet, if the principal or surety fail to discharge that liability when it matures, interest may be allowed on the amount from the time the liability accrues, even if the amount of recovery exceed the penalty named in the bond. 22 R. C. L., 518. As against the sureties, however, interest is allowed only from the date of notice to them of the breach, or from the date of a demand on them to make good such breach. Dickinson v. White,25 N.D. 523; 143 N.W. 754; 49 L.R.A. (N.S.), 362. See valuable note toGriffith v. Rundle, 23 Wn. 453, as reported in 55 L.R.A., 381, where the rule is stated, with citation of authorities; and see, also, dissenting opinion of Clark, J., in Machine Co. v. Seago, 128 N.C. p. 162. But in North Carolina, both by statute and judicial decision, the surety's liability may not exceed the penalty of the bond until judgment has been rendered against the surety. Interest may then be collected on said judgment without regard to the limit of liability named in the bond, because the nature of the demand is altered by the judgment, and under the statute such judgment would bear interest at the rate of 6 per cent per annum until paid. C. S., 2309; Warden v. Nielson, 5 N.C. 275; Moseley v.Johnson, 144 N.C. 274; Bernhardt v. Dutton, 146 N.C. 206; Machine Co.v. Seago, supra.
After a careful and painstaking investigation of the questions presented by the appeal, we are constrained to believe that the case has been correctly decided.
Affirmed.